Cornish, C. J.
These four petitions were brought under R. S., Chap. 7, Secs. 87-91, the petitioners-claiming that they were respectively elected to the offices of Sheriff, Clerk of Courts, Register of Deeds and County Attorney of Androscoggin County at the State election held on September 9, 1918. The cases involved the same questions and were tried together. After a full hearing, all the petitions were dismissed by the single Justice. They are now before us on appeal. As presented to the single Justice the issues were two: First: As to the legal counting of certain disputed ballots; Second: As to alleged fraudulent practices in Ward 4 in the City of Auburn and the legal effect thereof.
Under the first issue, one hundred and eighty-four disputed ballots were submitted to the single Justice and were passed upon by him. His findings and the reasons therefor are stated at length in his written decision. So far as this appeal is concerned, and the questions argued before us, his determination in all these disputed ballots, except possibly in eleven, is acquiesced in by the parties, and the consideration of these eleven becomes unnecessary under the conclusion arrived at on the other and main issue of the case.
*103 The result of the Justice’s 'tabulation in the entire, county, not including the ballots from said Ward 4, is as follows:
For Sheriff:
C. J. Russell. 4779
Ferdinand E. Stevens. 4775
Russell’s plurality. 4
For ClerK of Courts :
Charles P. Lemaire. O OO -cH
John E. Reade. O CO ^
Lemaire’s plurality. 72
For Register of Deeds :
William P. Lambert. 4780
Nathaniel P. Gould. 4726
Lambert’s plurality. 54
For County Attorney:
John D. Clifford, Jr.. CO <M OO
Albert E. Verrill. CO CO t>
Clifford’s plurality. 87
The tabulation of all the votes in Ward 4, by the Justice, is a follows:
Fob. Sheriff:
Ferdinand E. Stevens tO CD OO
C. J. Russell. H-1
Stevens’ plurality. 149
*104 For ClerK of Courts:
John L. Reade. CO CD to
Charles P. Lemaire... ! — 1 Cn ^
Reade’s plurality. 138
For Register of Deeds:
Nathaniel P. Gould. r — ( <N
William P. Lambert. Cn r-i
Gould’s plurality. 139
For County Attorney:
Albert E. Verrill. bO 00 00
John D. Clifford, Jr.. H* Cn CO
Verrill’s plurality. 135
Including all the ballots of Ward 4, as above, the net result of the tabulation in the county is as follows:
Stevens’ plurality.149- 4=145
Reade’s ” .138-72= 66
Gould’s ” .139-54= 85
Verrffl’s ” .135-87 = 48
This brings us to a discussion of the legal effect of the illegal ballots and the fraudulent conduct in Ward 4. When the ballot-box was opened at the close of the polls, it was found to contain 456 ballots. The number of names checked on the incoming list was 396, and that represents the number of voters who voted and therefore the legal number of ballots cast. The ballot-box therefore contained these sixty spurious votes. The single Justice found that this result was rendered possible by utter disregard of the election laws on the part of ward officers and election clerks, and that these spurious ballots were fraudulently deposited in the ballot-box with the knowledge and connivance, if not with the active participation of the warden, who did not see fit to testify in the case, although present at the hearing.
*105 The petitioners, in their petitions, base their claims to office upon the proposition that because of these irregularities and fraudulent practices in Ward 4, the entire' vote of said ward should be rejected, the legal and illegal votes being so commingled that the exact legal vote cannot be determined.
This was the legal issue as presented to the single Justice at the time of the hearing, and upon this point the Justice held as follows:
“By proof of these fraudulent acts the record and return of' this election in Ward 4 in the City of Auburn have been impeached. Their value as legal evidence of the result in that ward has been destroyed; their probative force is gone. Attorney General v. Newell, 85 Maine, 273, 276; People ex rel. Judson v. Thatcher, 55 N. Y., 525; 14 Amer. Rep., 312; McCrary on Elections, 4th ed., SeA 569, 570. The cases cited on brief of petitioners’ counsel amply sustain this conclusion.
But the case shows that there were 395 voters in that ward who legally cast their votes at that election; at least there is no evidence to show otherwise; only one naipe of the 396 checked on the incoming check lists, has been shown to have been fraudulently checked, and that through impersonation of the voter by another. We do not know what ballots these legal voters cast, or for whom they voted; the fraudulent ballots carry no marks. I cannot assume that they were all cast for the Republican candidates in these cases, although if I were to do so, all the respondents except Mr. Verrill would be shown to be elected. Some of .these fraudulent ballots may have been cast for Democratic candidates, and some may not have been cast for any party to these petitions.
The petitioners contend that the true vote, therefore, cannot be ascertained and that the entire vote of the ward must be rejected. I cannot accede to this contention. The vote cast in that ward becomes a matter of proof by other evidence than the record and return. In a leading and oft cited case, it is said, ‘In election cases, if the return is discredited, so that it is no longer evidence of the right of the party claiming under it, then the question who received the majority of the votes is to be ascertained by other legal proof. The vote of the district or precinct to which the return relates is not to be disregarded. The electors ought not to be disfranchised because no return is made, or because it has been rendered valueless by the fraud or mistakes of others.In this case if the return was *106 rejected, the parties were remitted to other proof to ascertain the result of the election in the disputed district.’ People ex rel. Judson v. Thatcher, supra, 14 Amer. Rep., at page 321. So in the instant cases I think that the value of the record and return as evidence having been destroyed, the vote of the entire ward is not to be rejected, but the parties were remitted to other evidence. The practice of calling the electors themselves to testify has been approved even under secret ballot laws, the personal privilege of the witness to refuse to disclose for whom he voted being respected. People ex rel. Smith et al. v. Pease, 27 N. Y., 45; People ex rel. Judson v. Thatcher, supra; Reid v. Julian, 2 Bart., 822, cited at length in McCrary on Elections, 4th ed. sec. 572.”
The petitioners now abandon the claim that the entire vote of Ward 4 should be rejected, and accede to the rule of law as laid down by the Justice, which in our opinion, was correctly stated. Legal voters are not to be disfranchised by such a method. But the petitioners now contend that under the circumstances, the return being discredited, the burden of proving the number of legal ballots cast in Ward 4 was upon the respondents and not upon the petitioners, and as the respondents introduced no testimony on this-point, the petitioners were entitled to judgment because outside of Ward 4 they had a plurality. This question of the burden of proof became the ultimate ground of decision, and on this point the ruling of the sitting Justice and the reasons therefor were stated at length:
“Upon each petitioner falls the burden of showing that he was elected to the office which he claims. Before the Court can enter judgment in his favor it must appear ‘that the petitioner has been elected, and is entitled by law to the office claimed by him.’ It is not sufficient to show that the incumbent was not elected; the petitioner must show that he himself was elected and is entitled by law to the office. Benner v. Payson, 110 Maine, 204, 207; Libby v. English, 110 Maine, 449, 459; Murray v. Waite, 113 Maine, 485, 492. Prior to the enactment of the statute upon which these proceedings are based, ‘the only existing process by which the right of one unlawfully holding an office could be inquired into, was by quo warranto. This writ issues in behalf of the State against one who claims or usurps an office to which he is not entitled, to inquire by what authority he supports his claim or sustains his right. The proceeding is instituted by the attorney general on his own motion or at the relation of any *107 person, but on his official responsibility.It removes the illegal incumbent of an office, but it does not put the legal officer in his place. It is insufficient to redress the wrongs of one whose rights have been violated. To restore a person to an office from which he has been unlawfully excluded, the' proper’process is by mandamus. By quo warranto the intruder is ejected. By mandamus the legal officer is put in his place.' The statute accomplishes by one and the same process the objects contemplated by both these results. Prince v. Skillin, 71 Maine, 361, 366. And it enables a claimant of an office held by another to institute proceedings upon his own initiative, without the intervention of the attorney general. The form of procedure is new, but the position of the petitioners and the rules of evidence are the same. In quo warranto the burden is upon the respondent to show his title to the office claimed and occupied by him. Attorney General v. Newell, 85 Maine, 276. But when the process is instituted by the attorney general upon the relation of a private individual claiming the office held by the respondent, failure on the part of the respondent to prove his title to the office does not establish the title of the relator, for upon that issue the plaintiffs have the affirmative, and the burden is upon them to maintain it. People ex rel. Judson v. Thatcher, 55 N. Y., 525; 14 Amer. Rep., 312, 316; Note to State v. Kupferle, 44 Missouri, 154, in 100 Amer. Dec. at foot of page 271. So in these cases before the court, the burden is upon each petitioner to show that he was elected and is entitled by law to the office which he claims.”
“Neither petitioners nor respondents have seen fit to introduce other evidence. I think therefore that the decision of these cases turns upon a determination of the question upon whom the burden of proof rests. The petitioners say that this burden is upon the respondents, but we have seen that in the instant cases the burden is upon each petitioner to establish his title to the office claimed. Notwithstanding the fact that upon the vote of the rest of the county the petitioners appear to be elected, yet after the petitioners had destroyed by evidence of fraud the probative value of the record and return in Ward 4, and in doing so had disclosed that a possible maximum of 395 legal ballots were cast in that ward, I think and therefore rule that the burden of proof was still upon the petitioner in each case to show that he received a sufficient number of those legal ballots in Ward 4 to give him a greater number of votes throughout the county, *108 than his opponent. The petitioners have therefore failed to show that they have been elected and are entitled to the offices claimed by them, and the entry in each case must be' — Petition dismissed with costs.”
This is a correct exposition of the law as it obtains in this State. The proceeding is wholly statutory and the statute places the burden of proving his entire case squarely upon the petitioner. He is the moving party, the claimant, and he must establish his claim. Under R. S., Chap. 7, Sec. 87, “Any person claiming to be elected, to any county or municipal office .... may proceed as in equity against the person holding, or claiming to hold such .office, or holding a certificate of election to such office, or who has been declared elected thereto by any returning board or officer, or who has been notified of such election.” The proceeding is permitted against not only the holder of a certificate of election, but against four other classes of respondents, viz: one holding the office, one claiming to hold it, one declared elected, and one notified of election.. The certificate cuts little figure. The decision must rest upon the number of legal ballots received by the petitioner and he must show that in the election throughout the entire district, he has received a plurality of all the legal ballots cast. He cannot select all the precincts but one, even though some illegal or fraudulent ballots may have been shown cast in that one, and resting upon a plurality in that selected portion, compel the respondent to go on with the proceeding and show the number of legal ballots the respondent received in that remaining precinct. The statute contemplates no such procedure. Its words are “And if it appears upon such trial or hearing that the petitioner has been elected and is entitled by law to the office claimed- by him .... such Justice shall render judgment in favor of such petitioner, if he is found, upon hearing, to be entitled thereto.” Sec. 88.' The burden to make this appear under this statute rests throughout the case upon the petitioner, and at no stage shifts to the respondent. The contestants here cannot both oust the defendants and seat themselves, unless they prove that they were elected by the legal vote of the entire county of Androscoggin. The legal vote outside of Ward 4 is not sufficient.
This the petitioners failed to do. Therefore, the entry must be:

Petitions dismissed, with costs for respondent in each case.