**STATE ex rel. STEVENS et al. v. BLACK et al. (No. 1704.)**

Court of Civil Appeals of Texas. Beaumont. Jan. 5, 1929.

Rehearings Denied Feb. 6, 1929.

as, 1925, but subsequently had undertaken to change its status as a municipal corporation from that of a purported incorporated 'town' to that of a 'city' under Chapter 1 of said Title, and that the respondents were purporting and attempting to act as officers of the purported municipal corporation, the said A. L. Black as Mayor, J. M. Orton, C. C. Brown, O. M. Stone, H. F. Lanier and Garland Smith as Aldermen, R. J. Damrel as marshal, A. L. Hancock as tax assessor and collector, and Garland Smith as Secretary, each claiming that they had been duly elected or appointed as such officers and were assuming to act, and were acting, for and in behalf of said so-called City of Jasper in such official capacities. It was also alleged by Relators that the town of Jasper was never legally incorporated, and that the subsequent attempt to change its status from that of a purported town to, that of a purported city was also invalid and the purported municipal corporation then had no valid or legal existence, and the Respondents were not lawfully acting as officers thereof, for the reason that in the boundaries of the town there was included a large amount of territory, described in detail, which was not intended to be used for town purposes and was not suitable for town purposes, and which could derive no benefit whatsoever by being embraced within the limits of the municipal corporation; that the only reason for including any of said property was that it might be subjected to taxation for the support of the purported municipal corporation."

Y. A. Land, of Houston, G. E. Richardson, of Jasper, and J. A. Mooney, of Woodville, for appellants.

C. A. Lord, of Beaumont, for appellees.

HIGHTOWER, C. J. Appellants have set forth in their brief in this case a statement showing the nature and result of this suit, which is in no way questioned by appellees, and we will therefore adopt that statement as far as we deem necessary in disposing of this appeal. The statement by appellants is, in part, as follows:

"This is a quo warranto proceeding, instituted by the State of Texas, acting through J. A. Mooney, Jr., County Attorney of Jasper County, who, in filing the suit, acted of his own accord and upon the relation and at the instance of F. P. Stevens and another taxpayer in the territory affected. The pleadings were subsequently amended to permit sixty-five additional persons to intervene as relators, each of whom were citizens of Jasper County, Texas, and residents of and taxpayers in the territory affected. A. L. Black, J. M. Orton, C. C. Brown, O. M. Stone, H. L. Lanier, Garland Smith, R. J. Damrel and A. L. Hancock were named as respondents. The object of the suit was to have the town or city of Jasper, Texas, adjudged to have no legal existence as a municipal corporation and to oust the respondents from the respective offices which they were claiming, and the functions of which they were exercising, or attempting to exercise. * * *

"In the first amended information in the nature of quo warranto upon which the case went to trial, it was alleged that the town of Jasper originally had attempted to incorporate under the provisions of Chapter 11 of Title 28 of the Revised Civil Statutes of Tex-

The petition contained a prayer that the original attempt to incorporate as a town and the subsequent attempt to change its status to that of an incorporated city be declared void, and that the respondents be ousted from the offices they were attempting to hold, and enjoined from further exercising or attempting to exercise the functions of those offices.

The answer of the respondents contained a general demurrer, a number of special exceptions, a general denial, and special denials of all the material allegations contained in the petition of relators.

The case went to trial in the district court of Jasper county on December 23, 1927, with a jury, and on December 30, 1927, the evidence was closed and the case was submitted to the jury on the following special issue, which was the only issue submitted to the jury:

"When the incorporation of the town of Jasper was voted upon, was it the intention and expectation of those voting in favor of such incorporation that all of the lands and real estate in the corporate limits, as shown by the evidence to be included within the present city limits, would be used for strictly town purposes?"

On December 31st, shortly after dark, the jury returned its verdict answering this spe-

cial issue in the affirmative. Thereupon in due time judgment was entered upon the verdict denying to relators any of the relief prayed for, and establishing and declaring that the city of Jasper had a legal existence and that the respondents were the duly elected and acting officers of the city of Jasper, as they purported to be. Relators in due time filed their motion for a new trial, which was overruled, and they have perfected their appeal from the judgment to this court, and assign a number of errors which they contend entitle them to have the trial court's judgment reversed.

These contentions are, in the main, that the jury's verdict or answer to the special issue that was submitted is without support in the evidence, and is so against the great weight and preponderance of the .evidence as to be clearly wrong; and, further, that there was misconduct in the jury room after the case had been submitted to the jury, in that the members of the jury discussed matters and things, while deliberating upon the case, that were improper for discussion and consideration in the jury room; and, further, that the district clerk of Jasper county, Mr. W. O. Stringer, made statements and communications to the jury while the jury was deliberating upon the case that were highly improper to be made to the jury, and that such conduct on the part of the district clerk was calculated to prejudice and did prejudice the rights of relators, and caused the jury to return a verdict against them; and, further, that, after the case was given to the jury by the trial judge, the jury was not kept in the charge of an officer of any kind while deliberating upon the case, and that this was highly prejudicial to relators, and was of itself such an error on the part of the trial judge as to necessitate a reversal of this judgment.

This states, we say, the main contentions made by appellants for reversal of this case.

■ Appellants, in their brief, first advance their contention that the jury's verdict is without support in the evidence, or is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong. The evidence adduced upon the trial bearing upon the only issue submitted to the jury is very voluminous indeed, and required practically a week for its introduction. It is so voluminous that we could not, within reasonable bounds, attempt to detail and discuss the evidence bearing upon this contention. We will say, however, that we have gone through the record very thoroughly and carefully, not.being content to take the statements contained in the briefs of counsel, but have searched the. statement of facts itself for all the evidence bearing upon this contention, and which the jury, it must be presumed, gave full consideration while deliberating upon the case. After having done this, we have concluded that this court would not be authorized to hold that the evidence adduced upon the issue submitted to the jury was so wholly and overwhelmingly against the jury's finding as to show that their verdict was wrong, and we therefore have overruled this first contention of appellants.

We shall next dispose of the contention made by appellants that the jury's verdict in this case was the result of improper conduct in the jury room, and, in doing this, we shall proceed at once to state what the undisputed facts show in this connection.

As we have already shown, the case was called for trial in the lower court on the morning of December 23, 1927, and, after the general demurrer and special exceptions interposed by respondents were overruled, the case proceeded to trial with a jury of twelve men; but one of the jurors, right at the inception of the trial, became ill and was excused, and it was agreed between the parties to try the case with the remaining eleven jurors. The undisputed evidence shows that the taking of testimony continued throughout the week, and that the trial judge submitted to the jury the one special issue that we have hereinbefore copied about 7:30 p. m. on December 30, 1927. The testimony further shows without dispute that the jury, after receiving the case, was not in the custody or charge of any officer, but was turned loose to deliberate upon the case and to conduct themselves according to their own desire and judgment. The jury deliberated upon the case that night until somewhere after midnight, and then retired for the balance of the night, and, after getting breakfast next morning at the usual hour, again commenced their consideration of the case. This was Saturday morning, December 31st. The undisputed evidence further shows that about 3 o'clock p. m. on the same day the district clerk of Jasper county, W. O. Stringer, entered the jury room where the jury was deliberating, and desired to know how the jury was getting along on the case. Mr. Stringer was informed, as we view this record, that there was little hope that the jury would be able to reach any verdict. Mr. Stringer then desired to know how the jury stood numerically—that is to say, how they were divided —and he was told that the jury were divided eight to three, and that they had been so divided from the time they first entered the jury room to deliberate upon the case. Mr. Stringer thereupon, as the undisputed facts show, suggested to the jury that they "proposition" each other. Mr. Stringer meant by this expression that the jurors should interrogate each other and try to ascertain the cause of their differences, and that they try to reach a verdict in the case. Mr. Stringer, on this occasion, was in the jury room, as the testimony shows, some five or six minutes, and when he left the jury room on this occasion the jury still stood divided eight to three. The undisputed evidence shows that eight of the jurors were in favor of giving a negative

answer to the special issue submitted for their consideration, and three of them insisted on giving an affirmative answer to the issue, which of course, shows that eight of the jurors were in favor of relators during all the time that they had been deliberating upon the case and up to the time that Mr. Stringer first entered the jury room. Several of the jurors testified on the motion for new trial that, at the time of Mr. Stringer's first visit to the jury room, when he learned of the improbability of a verdict, he made the statement to the jury, in substance, that it was immaterial what the jury's answer to the issue might be, for the reason that the case would be appealed anyway, regardless of how the jury answered the issue, and that, in fact, the necessary preparation for an appeal had already been made. Two of the jurors who testified on the motion for new trial in favor of relators stated that Mr. Stringer, the district clerk, made these communications and statements to the jury at the time of his first visit. Mr. Stringer, however, who also testified on the motion for new trial, stated that he did not tell the jury that their answer, whatever it might be, to the special issue would be immaterial or that any preparation whatever for appeal had been made. In other words, Mr. Stringer emphatically denied what the two jurors had stated in this connection. Mr. Stringer did admit, however, in his testimony, that he stated to the jury that the case would probably be appealed, regardless of what their answer might be to the special issue, as cases of such magnitude as the one before them were usually appealed by the losing side. Mr. Stringer also admitted in his testimony on the motion that he was very anxious that the jury should reach a verdict in this case, because, as he said, the court had already had two hung juries at that term, and that he was disgusted, substantially, with hung juries. In other words, Mr. Stringer's own testimony, while the motion for rehearing was being heard, shows, we think, that he was willing and anxious for the jury to know that he was in favor of a verdict being reached, and, we might say, that a verdict ought to be reached. We think this conclusion cannot be escaped.

After Mr. Stringer had left the jury room, which, as we have shown, was about 3 o'clock on Saturday afternoon, December 31, 1927, one of the jurors who up to that time had been in favor of relators went over to the other side, and the jury then stood seven in favor of relators and four in favor of respondents. The testimony further shows without dispute that later on the same afternoon, in fact, just shortly before dark, Mr. Stringer went again to the jury room and asked the jury if they had gotten a verdict, or something to that effect, and was informed that no verdict had been reached, but that the jury then stood seven to four. Mr. Stringer

then told the jury that the district judge, Hon. V. H. Stark, who lived in Orange, Tex., was intending to leave Jasper at 6:30 that evening and go to his home at Orange, and that in all probability he (Judge Stark) would not return to Jasper before some time in the afternoon of Monday following. He told the jury that Judge Stark would be compelled to go to San Augustine the following Monday morning and open his court there, and impanel his grand jury and jury for the week, etc., and that he could not return to Jasper to receive any verdict from the jury earlier than some time the following Monday afternoon, and he gave the jury to understand that, unless they reached a verdict before Judge Stark took his departure from Jasper on that evening, they would have to be kept together and tied up on the case until Judge Stark might return to Jasper the following week. Mr. Stringer, on this occasion, asked the jurors if they wanted their pay as jurors for the week, and some of them said they were broke and might have to have money to pay their hotel expenses. Anyhow, Mr. Stringer made arrangements to pay the jury off what was coming to them for the week, and did so, and then went to his home in the town of Jasper, and while he was gone the jury made up their verdict and answered the special issue, as we have shown, in favor of respondents. One of the jurors who testified upon the motion for new trial stated that he never would have answered the special issue as he did answer it if it had not been for the fact that he knew that the jury would be tied up and could not get loose on account of the fact that Judge Stark would be absent from Jasper until at least some time during Monday of the following week. Two of the jurors on the motion for new trial testified, in substance, that what the district clerk had said to them about the verdict being immaterial regardless of what it might be had something to do with their answering the issue as they did. They stated that they felt that, if their finding was going to be immaterial anyway, there was no use or reason in their being tied up and kept together, and that they might go on and dispose of the issue, regardless of whether they found for one or the other of the parties.

The undisputed evidence showed that six of the jurors who tried this case (and we have shown there were only eleven of them) had just been hung up on another jury case which had just preceded this case, and that as soon as they were discharged from that case they were immediately put in the jury box in this case; and it is further shown that the weather was very cold and disagreeable at the time the jury was deliberating upon this case, and that some of the jurymen lived quite a distance in the country from the courthouse in the town of Jasper, and it is highly probable that some of these

tired jurors were very anxious to go to their homes and families as soon as they could possibly do so.

Some two or three of the jurors who sat in this case testified upon the motion for new trial in favor of respondents, to the effect that they did not hear Mr. Stringer, the district clerk, say in the jury's presence that the answer of the jury to the special issue would be immaterial, or that any preparations for appeal in the case were in progress or had been made. But all of these jurors did testify, in substance, that it was stated by some-one in the jury room, while the deliberation was going on, that their answer to the special issue would be immaterial because an appeal of the case would be had anyway, and one of the jurors who testified in favor of respondents on the motion for new trial stated, in substance, that he understood from what Mr. Stringer said to the jury about Judge Stark going home and not returning before Monday, had come from Judge Stark himself, and that Mr. Stringer had been requested by Judge Stark to so inform the jury. Mr. Stringer, however, testified that he did not tell the jury that Judge Stark had authorized him to make any statement whatever to the jury, and he says that he did not intend to leave the impression with the jury that he had been sent by Judge Stark to communicate with them.

We have stated in this connection what we believe to be the undisputed material evidence bearing upon the claim of misconduct in the jury room, and as to whether there was such conduct as to require the setting aside of the jury's verdict. Now let us see what the present state of the law is with reference to misconduct in the jury room while the jury is deliberating upon a verdict. Learned counsel for the appellees here advance the proposition, in substance, that the trial judge, having heard the motion for new trial and having heard all the evidence of the members of the jury and the district clerk, touching the claimed misconduct and its effect, and having concluded as a fact that nothing that took place was calculated to prejudice or did prejudice the rights of appellants, such conclusion on the part of the trial judge is binding upon the appellate court, and he was in the rightful exercise of a sound discretion given him by law in overruling the motion, and that it is not the province of this court to reverse and disturb the finding of the trial court in the matter.

■ It seems to be now well settled by the more recent decisions of our Supreme Court and the Commission of Appeal, approved by the Supreme Court, that, where misconduct of any kind is shown to have taken place in the jury room, injury will be presumed, and then the burden rests upon the litigant who would uphold the verdict to show beyond a reasonable doubt that the misconduct did not in fact result in prejudice to the losing party.

We have so held in the comparatively recent case of St. Louis Southwestern R. Co. of Texas v. Smithhart, Administrator of the Estate of Lee Roy Smithhart, Deceased (Tex. Civ. App.) 9 S.W.(2d) 146. In that case, as our opinion will show, Judge Walker reviewed the authorities up to date touching the effect of misconduct in the jury room. The misconduct there complained of was a discussion by some of the members of the jury of the question of attorney's fees in that case and as to what effect it had had upon the jury in fixing the amount of recovery by the plaintiff. We held that the conclusion could not be escaped that the question of attorney's fees had been mentioned and discussed to some extent by the jury, and that such constituted misconduct, and that it became a question of law for the trial court to determine as to what the legal effect of that misconduct was, and in that connection Judge Walker, speaking for this court, said:

"Having determined the facts, of course, it becomes the duty of the trial court to announce the law of such facts, by either granting a new trial or overruling the motion for a new trial. The trial court's conclusions of law on such facts are subject to review by the appellate court, as are the conclusions of law on other facts. If, under the decisions announcing the law, the trial court has improperly construed the facts, it becomes the duty of the appellate court to reverse its judgment. Where misconduct has been shown, as in this case, the law presumes injury. Upon such a showing, as a matter of law, the complaining party is entitled to a new trial, unless it appears beyond a reasonable doubt that injury was not shown.

"If there is a reasonable doubt as to the effect of the misconduct, the trial court should grant a new trial, and, should that relief be refused in the lower court, it becomes the appellate court's duty to reverse the trial court's judgment."

■ The law that we have just quoted, as announced by Judge Walker, is applicable to the situation here. It is not contended by counsel for appellees in this case that the statements and communications made by the district clerk, Mr. Stringer, to the jury while deliberating upon this case were proper to be made to the jury, but their contention is, in substance, that the trial court has evidently concluded that these statements and communications and conduct on the part of the district clerk, in the presence of the jury, was not calculated to cause the jury to reach their verdict against relators, and that it probably did not do so, and that such conclusion by the trial judge is binding upon this court. We cannot agree with learned counsel for appellees in such contention. It was, of course, improper for the district clerk to enter the jury room and give the jury to understand that he was very anxious that a verdict should be reached by them, and the undis-

puted testimony in this case shows that Mr. Stringer did this, not that he intended to do anything improper, but what he did and said in the presence of the jury was improper conduct in the jury room, and, unless this record shows beyond a reasonable doubt that such conduct did not prejudice appellants, it is the duty of this court, under the law as now settled in Texas, to reverse this judgment.

Now let us look briefly at the situation and see whether it is shown beyond a doubt that the communications and statements of the district clerk to the jury in the jury room had no effect upon the jury in bringing about the verdict in this case. As we have shown already, the jury stood eight to three for relators from the time they got the case until Mr. Stringer had his first communication with the jury. One juror then went over to the other three for the respondents, and thus the jury stood seven for relators and four for respondents, and again about dark Mr. Stringer came to the jury room and gave the jury to understand that the district judge was expecting to leave the city of Jasper in a very little while, and that, if he should do so before a verdict was reached, the jury would have to be tied up and kept together until at least Monday evening of the next week. Up to that time this record would indicate that there was no reasonable hope that the jury would reach a verdict in this case, especially a verdict in favor of respondents. But the jury being convinced, as we think this record reflects, that they would either have to reach a verdict of some kind or remain tied up for an unreasonable length of time, the seven that were in favor of relators all at once and at the last moment came over to the four that were in favor of respondents, and thereby relieved themselves from the fatigue and uncomfortable situation that they were in at the time, considering the fact that they had been tied up all that week and some of them several days before, and the weather was cold and disagreeable, and some of the jurors lived quite a distance in the country. Besides, as we have already shown, one or two of the jurors testified upon the motion for new trial that they never would have answered the special issue as they did had it not been for the fact that they thought they would be tied up and held together for an unreasonable length of time. This, we think, was an affirmative showing that the misconduct complained of resulted in the jury's reaching a verdict in this case. Now, can it be said that this verdict is the result of a full and fair discussion of the evidence before the jury? We think not. We cannot escape the conclusion that the jury reached the verdict they did reach in this case not from a full and fair and free discussion of the evidence. before them, but out of a fear and dread that they had of being tied up and held together for an unreasonable length of time, and under circumstances shown to be disagreeable and uncomfortable. The undisputed evidence in the case shows that the jury had sent word to Judge Stark early in the afternoon of December 31st that there was no hope of reaching a verdict, but they were informed by the judge at that time that he could do nothing for them, and that they must remain together and deliberate further upon a verdict. Now at that time the jury stood numerically as it had been from the first, and there was really no change in their standing until a few minutes before the verdict in this case was reached. It is clear to this court that the verdict in this case was not the result of a full and fair expression of the opinion of the jurors who tried it, based upon the evidence before them, but that, on the contrary, the verdict in this case was really coerced and should not be permitted to stand.

It results from these conclusions that this court is of the opinion that the trial judge was in error in overruling the relators' motion for a new trial on account of misconduct in the jury room, and that for that error it becomes the duty of this court to reverse this judgment, which was accordingly ordered.

■ If there should be a new trial of this case, there is only one question presented here that would probably arise upon another trial that calls for specific mention by us. The trial court held on this trial that the burden of proof rested upon relators to establish their contention that the city of Jasper had no legal existence by reason of the fact that territory had been included within the corporate limits that was not suitable for and was not intended to be used for town purposes. Counsel for relators objected to that ruling, and presented the matter here. We think the trial court was correct in ruling that such burden of proof was upon relators, and the trial court will be governed accordingly upon a retrial of this case.

All other contentions made by counsel for relators are overruled.

Judgment reversed, and cause remanded.