THE STATE OF TEXAS ET REL. AMBROSE LUKOVICH ET AL V. WALTER JOHNSTON ET AL.

No. A-3076. Decided April 25, 1951.
(238 S. W., 2d Series, 957.)

*Raymond E. Magee,* County Attorney, Galveston County, *Bryan F. Williams, Jr.,* and *Robt. R. Thornton,* all of Galveston, *Al L. Crystal,* of Houston, for appellant Lukovich.

*Markwell & Stubbs, Sherwood Brown, Henry Flagg, Walter Russel, Stone & Phipps, Vincent Licata,* and *Russel H. Markwell,* all of Galveston, for appellee, Johnston.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This is the second appeal of this cause, a quo warranto proceeding by which Ambros Lukovich, appellant, seeks to recover from Walter L. Johnston, appellee, the office of Fire-Police Commissioner of the City of Galveston. For the first appeal, see State of Texas Ex Rel Ambrose Lukovich v. Walter L. John-

ston et al. (Civ. App.), 228 S. W. 2d 327, error dismissed for want of jurisdiction.

At the second trial, the trial court deducted certain illegal votes which reduced Johnston's plurality but still left him the winner by 7 votes. Lukovich appealed, and the Court of Civil Appeals at Galveston reached the conclusion that he was entitled to the office. (235 S.W. 2d 932.) But it has certified two questions to this court, stating that it deemed that course advisable "Since this is a case which cannot lawfully reach the Supreme Court on writ of error, our jurisdiction being final."

These questions relate to the effect to be given to illegal assistance which certain voters in election precinct No. 14 of the City of Galveston got from the presiding judge of that precinct. Art. 3010, Vernon's Anno. Civ. Stat., provides that no assistance shall be given a voter in preparing his ballot, except when he is unable to prepare it because of some bodily infirmity that renders him physically unable to write or is over 60 years old and unable to read and write, in which event two election judges, sworn not to suggest how such voter shall vote, may assist him.

From the certificate it appears that Bock, the presiding judge, testified that when a voter looked like he needed help, without reference to age, he, the judge would ask the voter if he needed help; that if the voter answered in the affirmative, he, the judge, went alone with the voter into the voting booth, called off the names of the several candidates and then scratched off all except the name of the candidates for whom the voter wanted to vote; that he helped them because "they couldn't read or write", because they were "not educated"; that of those he helped, only about three were blind, that of "the rest of them" he helped, none was either blind or crippled; that he "guessed" he helped about 20 or 25 "people like that"; that he didn't think it could have been more than 25 voters whom he so helped. On this testimony the trial court's finding of fact was: "In weighing Mr. Bock's testimony it should be borne in mind that the burden of proof was upon Relator Lukovich to establish by a preponderance of the evidence the essential facts necessary to a recovery of the relief he sought, and it should further be borne in mind that Mr. Bock was a witness for the Relator Lukovich. Subjecting Bock's testimony * * * to these tests, I am of the opinion, and so find, that no more than 20 voters were illegally assisted by Mr. Bock."

With that factual background the questions certified are:

"Question No. 1: Was the assistance rendered by the presiding judge of Precinct No. 14, as set forth above, of such a nature as to render the ballots cast by such assisted voters void?

"Question No. 2: If Question No. 1, above, is answered 'yes', should this Court (a) eliminate from the total votes cast in the Fire-Police Commissioner race in the City of Galveston all of the 339 votes cast in such Precinct No. 14, and (b) since, by eliminating these votes, relator, Ambrose Lukovich, received a majority in the remaining precincts, should the office be awarded to him?"

Under our conclusion it is unnecessary to answer the first question, so we shall confine our discussion to the second.

■ A quo warranto proceeding is said to be akin to a suit in trespass to try title, because in the former the plaintiff may show "as a muniment of title that he was duly chosen to the office by the people", whereas in the latter he shows "that he derived the right to his property by a just and legitimate chain of title". State Ex Rel Jennett v. Owens, 63 Texas, 261. That this means he must rely on the strength of his title to the office rather than on the weakness of defendant's claim to it is made clear in Wood v. State Ex Rel Lee, 133 Texas, 110, 126 S. W. 2d 4, 121 A.L.R. 931, wherein it is held that in such a proceeding (1) the burden is on the plaintiff to prove that he got a majority (or plurality) of the legal votes cast; and (2) if he fails in this, the judgment must be for defendant even though all votes cast were void. And see State Ex Rel Stevens v. Black (Civ. App.), 14 S. W. 2d 72.

Yet, in the face of this rule, Lukovich proved only that the presiding judge of Precinct No. 14 assisted "about 20 or 25" voters who were not entitled to help under Art. 3010, supra, and assisted them in a manner contrary to that statute; and although, the officer swore that in each instance he marked the ballot so as to show the declared preference of the voter as among the candidates for Fire-Police Commissioner, Lukovich would have the courts throw out the 339 votes cast in Precinct No. 14 (of which he got only 92 to Johnston's 156), on the theory that the 20 or 25 votes so marked and cast contrary to the statute cannot be segregated from the more than 300 remaining votes as to which no question of any sort is raised or suggested. In support of his position he cites 29 C.J.S., p. 193, (and other authorities to the same effect) and says, "It's a point of 'one

bad apple spoiling the barrel', when the bad apple cannot be located." There are at least two weaknesses in Lukovich's position: first, the record shows no effort whatever on his part to segregate these 20 or 25 votes from the admittedly legal votes; second, we think he could have segregated them.

■ If he could have segregated them, then the entire votes in Precinct No. 14 cannot properly be excluded. 29 C.J.S. p. 193, supra, declares: "Where illegal votes can be segregated, only those votes should be thrown out, and the entire vote need not be impeached, but where it is impossible to separate improperly marked ballots from the others the votes of a whole district may be excluded."

■ In Russell v. Stevens, 118 Me. 101, 106 Atl., 115, 116, it is said, "The petitioners contend that the true vote, therefore, cannot be ascertained and that the entire vote of the ward must be rejected. I cannot accede to this contention. The vote cast in that ward becomes a matter of proof by other evidence than the record and return. * * * So in the instant case I think that, the value of the record and return as evidence having been destroyed, the vote of the entire ward is not to be rejected, but the parties were remitted to other evidence. The practice of calling the electors themselves to testify has been approved even under secret ballot laws, the personal privilege of the witness to refuse to disclose for whom he voted being respected." To like effect is Mehrens v. Election Canvassing Board, 134 Neb. 151, 278 N.W., 252

In Wood v. State Ex Rel Lee, supra, this court said: "We think that one of the ways to ascertain how a voter voted * * * is to put such voter on the witness stand and ask him the question. He can answer disclosing how he voted, if he so chooses. * * * If the voter who has been placed on the witness stand refuses to divulge how he voted, such refusal is no evidence in the case one way or the other."

It appears from the certificate before us that the poll list used in Precinct No. 14 at the election in question was before the court at the trial. From it Lukovich could have secured the names and addresses of all voters and could have compelled their attendance as witnesses at the trial. More than 300 of them would have said they were not assisted by Bock, so their testimony would have been brief. As to the 20 or 25 whom he did assist, to establish that fact plus the further fact that they were not entitled to such assistance under Art. 3010, supra,

would not necessarily take a great deal of time. That done, it would remain only to establish, either by the testimony of the witness or by examination of the ballot, for whom each voted and to deduct it from the proper candidate's total. Thus could the questionable ballots have been segregated and the admittedly good ballots given effect. But Lukovich did not pursue that course, so he did not discharge the burden of proof which was his and cannot be heard to say that Johnston is not entitled to the office.

It follows that our answer to Question No. 2 is "no" and the trial court's judgment should be affirmed.

Opinion delivered April 25, 1951.

No motion for rehearing on file.