STATE OF MAINE, BY INFORMATION OF
FRANK E. HANCOCK, ATTORNEY GENERAL,
ON RELATION OF CAROL C. BANKS, ET AL.
*vs.*
EBEN ELWELL, ET AL.

Waldo.    Opinion, June 24, 1960.

*Frank E. Hancock,* for State.

*Eaton & Glass,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN,
DUBORD, SIDDALL, JJ.

DUBORD, J.  On exceptions.  This is an information in the
nature of quo warranto commenced in the name of the
State of Maine, against eleven individuals who it is alleged,
are illegally holding themselves out as Directors of School
Administrative District #3, purportedly elected under the

provisions of Section 111-I, Chapter 364, P. L., 1957, commonly known as the Sinclair Act.

The relators describe themselves as being six residents and taxpayers of the Town of Liberty, one of the eleven towns embraced in the purported School Administrative District.

The information attacks the legality of the organization of the School Administrative District. The information sets forth in substance that the issuance of a certificate of organization by the School District Commission for the State of Maine was not in compliance with the provisions of Sections 111-F and 111-G, of the aforesaid statute, and that as a result of failure to conform with the requirements of these sections, the rights of the relators, guaranteed by the Fourteenth Amendment to the Constitution of the United States, have been infringed. It is averred that the eleven respondents are usurping the management of the public schools of the towns involved.

The information inquires by what warrant the respondents claim to have, use and enjoy the offices of School Directors and prays that investigation be made of their status and confirmed by the court, if valid; otherwise that the respondents be ousted.

The information in the nature of quo warranto was signed by the relators on July 16, 1959, and a few days later was endorsed by the Attorney General and filed in the Superior Court within and for the County of Waldo. An order of notice was issued and service duly made upon the respondents. The cause was set for a hearing and upon the day of the hearing, the Attorney General withdrew his appearance. No objection was made by the respondents to this withdrawal. The respondents promptly moved for dismissal on the grounds that the Attorney General is a necessary party in every stage in such a proceeding. The

relators objected. Over their objections, the motion was granted and the cause dismissed. To this ruling, the relators excepted and the case is before this court upon these exceptions.

The only issue presented is whether or not the Attorney General may, after commencement of an information in the nature of quo warranto by relation of private citizens, dismiss or discontinue the information as of right, in the exercise of his discretion, without the assent of the relators.

Although this issue has been resolved in other jurisdictions, insofar as this court is concerned, it appears to be of novel impression.

The relators advance three main contentions in support of their position, viz.:

(1) After an information in the nature of quo warranto, duly endorsed by the Attorney General, has been filed in court, it becomes the prerogative of the relators to pursue the case to a final determination.

(2) If the Attorney General is to be regarded as a party to the proceeding, he cannot cause an information in the nature of quo warranto to be dismissed without the concurrence of the relators, and

(3) The Attorney General has exhausted his discretionary power once he has permitted an information in the nature of quo warranto to be filed in court, and he cannot thereafter cause a proceeding to be dismissed without concurrence of the relators.

Before giving consideration to the issue involved, some discussion of the nature of quo warranto proceedings and the history of this extraordinary remedy may be of interest.

"The writ of quo warranto is an ancient common law, prerogative writ and remedy. Indeed, it is

one of the most ancient and important writs known to the common law. The ancient writ was in the nature of a writ of right for the king, against him who claimed or usurped any office, franchise, or liberty, to inquire by what authority he supported his claim, in order to determine the right, or, in the case of nonuser, long neglect, misuser, or abuse of a franchise, a writ commanding defendant to show by what warrant he exercised such franchise, never having had any grant of it, or having forfeited it by neglect or abuse." 74 C. J. S. Quo Warranto, § 1 (b).

"The ancient writ of quo warranto was succeeded by an information in the nature of quo warranto which was also employed to try the right to an office or franchise." 74 C. J. S. Quo Warranto, § 1 (c).

The origin of the writ may be traced to a very early date in the history of the common law. The earliest case upon record is said to have been in the ninth year of Richard I, A. D., 1198. It was frequently employed during the feudal period, and especially in the reign of Edward I, to strengthen the power of the crown at the expense of the barons. As time went on, the encroachments and abuses of the ancient writ of quo warranto to accomplish the ambitions and selfish aims of sovereignty were limited and checked by statutory enactments.

Prior to the statute of Anne, enacted in 1711, an information in the nature of a quo warranto was employed exclusively as a prerogative remedy, to punish a usurpation upon the franchises or liberties granted by the crown, and it was never used as a remedy for private citizens, desiring to test the title of persons claiming to exercise a public franchise.

The information, as a means of investigating and determining civil rights between parties, may be said to owe its origin to the statute of Anne, which authorizes the filing

of the information, *by leave of court,* (emphasis supplied) upon the relation of any person desirous of prosecuting the same, for alleged usurpation of a public office or franchise.

For an interesting discussion of the history of quo warranto, see High's Extraordinary Legal Remedies, Chapter XIII, and also Spelling Extraordinary Relief, Book IV, Chapter LVII.

The history of our statutes relating to quo warranto goes back to Section 2, Chapter 54, Laws of 1821 by which Chapter the Supreme Judicial Court was established. Section 2 gives the court power to issue all writs of prohibition and mandamus, according to the law of the land, and also power to issue all processes necessary to the furtherance of justice or the regular execution of the laws. Presumably, under this last sentence the court, upon application, as provided in the statute of Anne, would have had power to issue a writ of quo warranto.

By Section 5, Chapter 96, R. S., 1840 the Supreme Judicial Court was given "power to issue writs of error, certiorari, mandamus, prohibition, and quo warranto."

By the provisions of Section 1, Chapter 107, R. S., 1954, the Supreme Judicial Court and the Superior Court, are given concurrent original jurisdiction in proceedings in quo warranto.

By Chapter 63, P. L., 1911, there was enacted into law, the same provisions now included in Sections 21 and 22, Chapter 129, R. S., 1954, with the exception that the current statute permits making processes in quo warranto returnable to the Superior Court as well as to the Supreme Judicial Court.

It may be of interest to note in passing that our New Rules of Civil Procedure do not alter the practice prescribed for proceedings in quo warranto. Rule 81 (b).

As pointed out in *Burkett, Petitioner; Leach* v. *Ulmer,* 137 Me. 120, 122, 15 A. (2nd) 858, the procedure in this State is instituted by the filing of an information in the nature of quo warranto. However, there are still some states wherein, by virtue of the fact that the Statute of Anne forms a part of their common law, or by force of special statutes, the person desiring to use this process files an application therefor with a court. This different method of instituting quo warranto proceedings is perhaps one reason for the diversity of opinions bearing upon the subject in various jurisdictions. Some courts have ruled that once a court has exercised its discretionary power over an information in the nature of a writ of quo warranto to inquire into the title to a public office, in the name of the state, by a private relator, the court has expended its discretionary power and the issues of law or fact raised by the pleadings must be tried and decided. In view of the fact that one of the arguments of the relators is that once the Attorney General has exercised his discretion in lending his name to proceedings in quo warranto, the relators have the right to proceed without him, further reference to this point will subsequently be made.

While, as previously pointed out, the procedure used in this State to test the title to a public office is an information in the nature of quo warranto, brought without the necessity of prior application to a court, it would appear, that the Statute of Anne forms a part of our common law in this State and that a private citizen might file application with the court seeking authority to bring an action of quo warranto in the name of the State of Maine.

> "In this jurisdiction, although proceedings in quo warranto have usually been begun by filing an information, as the reported cases show, the ancient practice of making application for a writ of quo warranto by petition is recognized and, by implication, authorized. R. S., Chap. 116, Sec. 21. (§

21, Chap. 129, R. S. 1954) This statutory provision has made no change in quo warranto as known to the common law." *Burkett, Petitioner; Leach* v. *Ulmer, supra.*

It is conceded by both sides that an information in the nature of quo warranto, claiming usurpation of a public office, insofar as this State is concerned, can be instituted only at the discretion of the Attorney General, with his consent, and upon his official responsibility. For judicial support of this doctrine, we need look no further than to our own decisions.

"The writ of quo warranto or an information in the nature thereof issues in behalf of the State against one who claims or usurps a public office to which he is not entitled, to inquire by what authority he supports his claim or sustains his right. The proceeding is instituted by the attorney-general on his own motion or at the relation of any person, but on his official responsibility. *Prince* v. *Skillin,* 71 Me. 361. This rule has been modified in this state only to the extent that when in quo warranto proceedings the title to office in a private corporation is involved the attorney-general need not be a party thereto. R. S., Chapter 116, Sec. 22." (Now Chapter 129, Section 22.) *Burkett, Petitioner; Leach* v. *Ulmer, supra.*

"Generally speaking, the institution of a quo warranto proceeding - - - - is a matter within the discretion of the Attorney General - - - - and, in the absence of a statute providing otherwise, the proceeding cannot be instituted or maintained without his consent." 74 C. J. S., Quo Warranto, § 18.

In support of contentions of the relators that after an information in the nature of quo warranto, duly endorsed by the Attorney General, has been filed in court, it is then the prerogative of the relators to pursue their case to a final determination, it is argued that well recognized procedure in actions of this kind indicates that it is the relators

who actually conduct and bear the brunt of the litigation. A large number of cases are cited in which the process of quo warranto, upon relation of the Attorney General, was instituted by persons claiming to be entitled to a public office held by an alleged usurper. In our opinion these cases are not in point and have no particular bearing upon the issue.

The Maine Legislature enacted a statute in 1880 authorizing a person who claimed to be elected to a county office to proceed as in equity against the person holding or claiming such office. This was § 1, C. 198, P. L., 1880. This section was amended by C. 260, P. L., 1893, extending the application of the statute to include municipal officers. These statutory provisions relating to contested elections are now included as § 84 to 88, inclusive, C. 5, R. S., 1954.

Before the enactment of these statutes pertaining to contested elections, the only existing process by which the right of a person claiming to be elected to a county or municipal office could be inquired into was by quo warranto, upon relation of the Attorney General.

> "Before the passage of the act under consideration, (§ 1 C. 198 P. L. 1880) the only existing process by which right of one unlawfully holding an office could be inquired into, was by quo warranto. This writ issues in behalf of the State against one who claims or usurps an office to which he is not entitled, to inquire by what authority he supports his claim or sustains his right. The proceeding is instituted by the attorney general on his own motion or at the relation of any person, but on his official responsibility. It lies against an officer appointed by the governor and council or elected by the people. It removes the illegal incumbent of an office, but it does not put the legal officer in his place. It is insufficient to redress the wrongs of one whose rights have been violated.
>
> "To restore a person to an office from which he has been unjustly removed or unlawfully excluded, the

proper process is by mandamus. By this, the rights of one lawfully entitled to an office, which has been illegally withheld, may be enforced. *Strong, Petitioner,* 20 Pick. 497.

"By quo warranto the intruder is ejected. By mandamus the legal officer is put in his place. The act c. 198, accomplishes by one and the same process the objects contemplated by both these results. It ousts the unlawful incumbent. It gives the rightful claimant the office to which he is entitled. It affords a speedy and effectual remedy instead of the tedious and dilatory proceeding of the common law." *Prince* v. *Skillin,* 71 Me. 361, 366.

See also *Racine* v. *Hunt,* 116 Me. 188, 100 A. 911, and *Russell* v. *Stevens,* 118 Me. 101, 106 A. 115.

Most of the cases cited by counsel for the relators in reference to the use of quo warranto in contested elections, arose before the enactment of the statutes giving to one who wishes to contest an election, authority to proceed as in equity, and in such cases it is to be expected that the one contesting the office would actually assume the burden of the litigation.

"An information in the nature of quo warranto must be carried on in the name of the people, but it is not necessary that the people should present or prosecute the information." *People ex rel Moltz* v. *Barber,* 289 Ill. 556, 124 N. E. 594, 596.

The remaining cases called to our attention upon this point have no application to the issue now before us.

Based presumably upon the premise set forth by counsel for the relators that it has been the practice, in cases where private individuals are actively interested, for such individuals to conduct the litigation in quo warranto proceedings instituted upon the relation of the Attorney General, the relators advance the statement that "from the review of the Maine cases it is apparent that by long-established rule

in this jurisdiction the Attorney General is not regarded as an essential participant in quo warranto proceedings after the information passes from his hands into the hands of the court."

Such a contention is without support of any authority and is in utter disregard of the history and very nature of quo warranto. The Attorney General in actions of this kind is neither a nominal plaintiff nor a co-plaintiff with the relators. He is the person essential to the institution and maintenance of the process of quo warranto and the ordinary rules existing between co-plaintiffs as to the power of dismissal without authority of the others is not applicable.

The law appears to be well established, that in the absence of a statute, the Attorney General directs and controls the proceedings.

"Ordinarily, the Attorney General or other officer authorized to act on behalf of the State may direct and control the proceedings on an information in the nature of quo warranto." 74 C. J. S., Quo Warranto, § 27.

"By the common law the relator in an information could not take any step in the cause in his own name, independently of the Attorney General. That officer was the only person whom the court would recognize, and he might dismiss the proceeding if in the discharge of his official duty he thought it proper to do so." *People ex rel Galloway* v. *Franklin County Bldg. Ass'n* 329 Ill. 582, 161 N. E. 56; *Hesing* v. *Attorney General*, 104 Ill. 292.

"At common law the Attorney General, and, under the Quo Warranto Act of 1937, the Attorney General or the State's Attorney of the proper county, have an absolute, arbitrary discretion to determine whether they will institute quo warranto proceedings or not, in all cases which are of purely public

interest. No leave of court is necessary, and the discretion vested in the State's prosecuting officers can not be controlled, coerced, or reviewed by the individual citizen." *Rowan* v. *City of Shawneetown,* 378 Ill. 289, 38 N. E. (2nd) 2, 5.

"In other words, as far as the prosecution of the action is concerned, that the Attorney General is in absolute and complete control of the conduct of the proceedings, and that no matter what the nature or the extent of the interest which the relators may have therein, they are not 'parties to the action,' and consequently can exercise no control with reference thereto." *State ex rel. Cage* v. *Petroleum Rectifying Co. of California,* 68 P. (2nd) 984, 985.

"This is an information at common law, not regulated by any statute, for the usurpation of an office, which the attorney general has the right to file *ex officio* in the name and behalf of the Commonwealth, at his own discretion, and leave to file which the court has no authority to grant or to withhold; and the mention of relators is mere surplusage, and does not affect the validity of the information or the form of the judgment to be rendered thereon." *Commonwealth* v. *Allen,* 128 Mass. 308, 310.

See also *Goddard* v. *Smithett, et al.,* 3 Gray (Mass.) 116, 123.

We pass now to the third main contention of the relators to the effect that "the Attorney General has exhausted his discretionary power once he has permitted an information in the nature of quo warranto to be filed in court, and he cannot thereafter cause a proceeding to be dismissed without concurrence of the relators."

We are of the opinion that the relators have confused judicial discretion with the discretion of public officers.

"Judicial discretion is the capacity of the individual judge presiding over a particular court to perceive and apply to the facts of each case in

judgment the law of the land, so that in each case the rights of the parties under the facts of the case may be declared and enforced according to the law of the land, and it is the exercise of the court's own judgment, within the law. It has been referred to frequently as a legal discretion, and cautious reasoning, and not a personal or individual discretion." 27 C. J. S., Discretion, Page 294.

"When applied to public functionaries, the term (discretion) refers to the power or right, conferred upon them by law, of acting officially in certain circumstances according to the dictates of their own judgment and conscience, uncontrolled by the judgment or conscience of others, - - - -."

27 C. J. S., Discretion, Page 290.

The Maine cases cited by the relators, viz., *Charlesworth* v. *American Express Company,* 117 Me. 219, 103 A. 358, and *Hill* v. *Finnemore,* 132 Me. 459, 172 A. 826, involve judicial discretion and are not in point.

The relators cite § 606, High's Extraordinary Legal Remedies, for authority in support of the contention that once discretion has been exercised in granting or withholding leave to file an information, discretionary power has been exhausted. This section refers to the decision in *State* v. *Brown,* 5 R. I. 1. However, it is to be noted that this section in High's Extraordinary Legal Remedies and the Rhode Island decision refer, not to the discretion of the Attorney General, but to the discretion of the court, after the court has allowed an information to be filed. It is to be recalled that in some states, both under common law and statutory provision, leave to file an information in the nature of quo warranto may be granted or withheld by a court upon application therefor. Judicial discretion on the part of the court is not the same as the discretion vested in an Attorney General.

It should be noted that in some states, it is provided by statute that a person may bring an action of quo warranto

where his interest is merely that of a citizen, voter or taxpayer, and still in other jurisdictions it is also provided by statute that a person may institute an action of quo warranto where he has a special interest, different from that of the general public in the office in question. See 74 C. J. S., Quo Warranto, § 30 (1) (a).

Moreover, in some states it is also provided by statute that there is a distinction in the power of the Attorney General to discontinue an action where a private right is combined with a public right. See *State ex rel Security Savings & Trust Company* v. *School District No. 9,* 148 Oregon 273, 31 P. (2nd) 751; and *Rowan* v. *City of Shawneetown, supra.*

The relators cite *State ex rel Black* v. *Taylor, et al.,* 106 S. W. 1023 (Missouri), and *State ex rel Perkins, et al.* v. *Long, et al.,* 204 S. W. 914 (Missouri), in support of their third main contention.

In the first case, after holding that in the absence of a statute conferring authority, a private citizen cannot proceed by quo warranto in his own name without the interposition of a proper state officer, it was held that where the Attorney General, or a prosecuting attorney, shall exhibit an information in the nature of quo warranto, and where an information has been filed by either officer, he cannot discontinue the proceedings without the consent of the relators. The court further said that where the prosecuting attorney permitted the use of his name in an information in the nature of quo warranto, he could not at the trial control the litigation and demand the dismissal of the proceeding, but that the court would control the process.

In the second case, it was held that in an action or information in the nature of quo warranto against a school district that the real party in interest is the relator, and that he may go ahead regardless of the attitude of the prosecut-

ing attorney, However, these decisions are based upon statutes existing in the State of Missouri.

Section 2631, Article XIII, Chapter 22, Revised Statutes of Missouri, 1909, provides in part as follows:

> "In case any person shall usurp, intrude into or unlawfully hold or execute any office or franchise, the attorney general of the state, or any circuit or prosecuting attorney of the county in which the action is commenced, shall exhibit to the circuit court, or other court having concurrent jurisdiction therewith in civil cases, an information in the nature of *quo warranto,* at the relation of any person desiring to prosecute the same; and when such information has been filed and proceedings have been commenced, the same shall not be dismissed or discontinued without the consent of the person named therein as the relator; but such relator shall have the right to prosecute the same to final judgment, either by himself or by attorney."

It is to be noted, therefore, that these decisions have no bearing upon the issue in the State of Maine where we have no applicable statute.

We are of the opinion that the institution of an information in the nature of quo warranto, upon the relation of the Attorney General, is a matter within the discretion of the Attorney General, and that the action cannot be maintained without his consent. He may, therefore, withdraw from the proceeding at his discretion, without the assent of the relators, and if he does so, the action is subject to dismissal, either on motion of the Attorney General, or, as was done in this case, upon motion of the respondents. Conceivably, a situation might arise in which the litigation has progressed to such a point where a dismissal might cause a grave injustice to the relators or the respondents. It is unnecessary for us to decide what our opinion might be in such a suggested state of circumstances. In the instant

case, the withdrawal of the Attorney General, and the dismissal of the action, upon motion of the respondents, occurred before any action had been taken by the court upon the merits of the process.

The ruling of the presiding justice was in accordance with the law.

*Exceptions overruled.*