**Herman L. WHITE, Appellant,**

v.

*Bennett HEARNE et al., Appellees.*

**No. 5366.**

Court of Civil Appeals of Texas, Waco.

Oct. 1, 1974.

Bobby L. Reed, Groesbeck, Orville Mc-Donald, Dallas, Vernon L. Smith, Waco, for appellant.

Bradley & Geren (L. L. Geren), Groesbeck, for appellees.

HALL, Justice.

Appellant brought this suit to contest the nomination of appellee as the candidate of the Democratic Party for County Commissioner, Precinct 4, of Robertson County, in the Second Democratic Primary Election held on June 1, 1974. According to the official canvass of that election, appellee received 549 votes and appellant received 516 votes.

After a hearing without a jury, the trial court found, inter alia, that appellee won the election by 33 votes and rendered judgment that he is the nominee of the Demo-cratic Party for the office in question in the November, 1974, general election. We affirm.

Among numerous irregularities pleaded by appellant which he asserted resulted in more than 33 illegal or fraudulent votes being cast for appellee, appellant alleged:

"7. Various voters were aided in voting by judges and clerks at voting precincts within the precinct, when said voters were not unable to vote because of some bodily infirmity such as rendered him unable to write or to see, and this was done in violation of Article 15.30 of the Texas Election Code."

In his single point of error, appellant contends the court erroneously excluded proof he sought to introduce in support of this ground of contest.

Article 15.30, V.A.T.C. Election Code, provides in part that any election judge or clerk "who assists any voter to prepare his ballot except when a voter is unable to prepare the same himself because of some bodily infirmity such as renders him unable to write or to see" shall be subject to a fine, or confinement in jail, or both. This penal statute complements Article 8.13 of the Election Code, which, insofar as pertinent, provides "nor shall any assistance be given a voter in preparing his ballot, except when a voter is unable to prepare the same himself because of some bodily infirmity, such as renders him physically unable to write or to see"; and that "where any assistance is rendered in preparing a ballot other than as herein allowed, the ballot shall not be counted, but shall be void for all purposes."

It is the exclusion of testimony of Ronald Nowak that is assigned as error. He testified that he served as a clerk at the voting box in the City of Bremond during the election in question. He was asked, "Did you observe any irregularities during the election?" Appellee's objection to the question "on the ground of no pleadings to support it" was sustained by the court.

Appellant then developed testimony from Mr. Nowak as a bill of exception. The part of it relating to voter assistance is as follows: "Q. During the election procedure that day in Bremond were there any persons who were aided to vote who were not so physically disabled as to be unable to mark their own ballots? A. There was quite a few of them aided to vote, like maybe 30%. Q. How were they aided, what means were used? A. Well, they came, in half of them couldn't read or write. We had two people going and telling them and helping them, telling them which person they wanted to vote for. And they had to mark an "X," most of them couldn't write or read. Q. Who told them what person to vote for? Was it the particular voter telling the person helping him who he wanted to vote for? A. Yes, sir. Q. These people . . . who received help in the Bremond box, were they so physically disabled as to be unable to mark a ballot? A. No sir. I don't think so. Q. Were any of them blind? A. One. . . . Q. But the other persons had the use of their hands and they could have marked the ballots, is that correct? A. Yes, Sir."

At the Bremond box, appellee received 410 votes and appellant received 288 votes.

■ To succeed, an election contestant must allege and prove particularized material irregularities in the conduct of the election; and establish either (1) that a different and correct result should have been reached by counting or not counting certain specified votes affected by the irregularities, or (2) that the irregularities were such as to render a determination of the true will of the majority of the voters impossible. Marks v. Jackson, (Tex.Civ. App.—Galveston, 1939, writ dism.) 130 S. W.2d 925, 927; Jordan v. Westbrook, (Tex.Civ.App.—San Antonio, 1969, no writ hist.) 443 S.W.2d 616, 618.

■ If we assume that the bill of exception was properly perfected, and if Mr. Nowak's testimony is given full considera-

tion, this proof does not specify any votes that should or should not be counted. It does not establish that any assisted voter cast his ballot in favor of appellee. It does not show that a different election result should have been reached. It does not suggest that the canvassed vote does not reflect the will of a majority of the electorate in the Bremond box or the election as a whole. In short, it does not establish that the irregularities testified to by Mr. Nowak were material.

Appellant says that the exclusion of the testimony prevented him "from proving, via entry into the Bremond box and by other evidence, that ballots cast by those who were illegally assisted could not be segregated from those voters and their ballots who were not illegally assisted." We do not agree.

In State ex rel. Lukovich v. Johnston, 150 Tex. 174, 238 S.W.2d 957 (1951), the Court was concerned with contentions by Lukovich that because an election official at a voting box assisted "about 20 or 25" voters who were not entitled to help contrary to the election statutes, all 339 votes cast in the box (of which he got only 92 to Johnston's 156) should be thrown out on the theory that the 20 or 25 votes cast contrary to the statute could not be segregated from the more than 300 remaining votes which were not questioned. The court said:

"It appears [from the record] that the poll list used in [the voting box] in question was before the court at the trial. From it Lukovich could have secured the names and addresses of all voters and could have compelled their attendance as witnesses at the trial. More than 300 of them would have said that they were not assisted, so their testimony would have been brief. As to the 20 or 25 whom he did assist, to establish that fact plus the further fact that they were not entitled to such assistance under Art. 3010, supra, would not necessarily take a great deal of time. *That done,* it would remain only to establish, either by the

testimony of the witness or by examination of the ballot, for whom each voted and to deduct it from the proper candidate's total. Thus could the questionable ballots have been segregated and the admittedly good ballots given effect. But Lukovich did not pursue that course, so he did not discharge the burden of proof which was his and cannot be heard to say that Johnston is not entitled to the office." (Emphasis added).

Our record discloses that appellant introduced into evidence a voter list used in the election in question. Thus, he had available the discovery procedures outlined in the *Johnston* case. Paraphrasing the holding in that case, appellant did not pursue that course, so he did not discharge the burden of proof which was his; and he cannot be heard to say that appellee is not entitled to the office.

The judgment is affirmed.

In view of the proximity of the general election, it is ordered that our judgment shall be finally effective immediately; and this court will not entertain a motion for rehearing. Art. 13.30, § (12), Election Code.