FRANZ U. BURKETT, ATTORNEY-GENERAL,

PETITIONER FOR WRIT OF QUO WARRANTO

ON RELATION, HERBERT W. LEACH *vs.* WALTER F. ULMER.

Penobscot.      Opinion, October 21, 1940.

*Ross St. Germain,*
*Arthur L. Thayer,* for relator.
*Harold A. Towle,* for respondent.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

STURGIS, C. J.   This is a proceeding begun by a petition for a writ of *quo warranto* brought by the attorney-general of Maine on the relation of Herbert W. Leach of Charleston to determine the nomination in the primary election of June 17, 1940, of the candidate of the Republican Party for the office of county commissioner for the County of Penobscot. Notice having been duly ordered, at the hearing before the Superior Court in vacation, the justice presiding dismissed the petition and denied the writ. Exceptions to this ruling were reserved.

The relator, Herbert W. Leach, and the respondent, Walter F. Ulmer, and nine other persons, were candidates for this nomination, and when the governor and council had counted and tabulated the votes cast and returned and had found that Walter F. Ulmer had received 2051 votes, Herbert W. Leach 2040 votes, and each of the

other candidates a smaller number, they declared that Walter F. Ulmer had been nominated. The complaint here made is that the governor and council counted and tabulated sixteen defective and illegal ballots for Walter F. Ulmer which should have been rejected, leaving the total legal votes cast for him only 2,035 in number, which was less than the 2,040 votes received by Herbert W. Leach and did not make him the nominee of his party for the office of county commissioner.

In this jurisdiction, although proceedings in *quo warranto* have usually been begun by filing an information, as the reported cases show, the ancient practice of making application for a writ of *quo warranto* by petition is recognized and, by implication, authorized. R. S., Chap. 116, Sec. 21. This statutory provision has made no change in *quo warranto* as known to the common law. *Davis, ex parte*, 41 Me., 38, 57. The writ of *quo warranto* or an information in the nature thereof issues in behalf of the State against one who claims or usurps a public office to which he is not entitled, to inquire by what authority he supports his claim or sustains his right. The proceeding is instituted by the attorney-general on his own motion or at the relation of any person, but on his official responsibility. *Prince* v. *Skillin*, 71 Me., 361. At common law, private individuals without the intervention of the attorney-general could not, either as of right or by leave of court, institute *quo warranto* proceedings. *Rice* v. *National Bank of the Commonwealth*, 126 Mass., 300. This rule has been modified in this state only to the extent that when in *quo warranto* proceedings the title to office in a private corporation is involved the attorney-general need not be a party thereto. R. S., Chap. 116, Sec. 22.

At common law, *quo warranto* proceedings to try the title to an office are confined to public offices. *State* v. *North*, 42 Conn., 79; *Com.* v. *Dearborn*, 15 Mass., 125; *Haupt* v. *Rogers*, 170 Mass., 71, 48 N. E., 1080; Mechem on Public Officers, Sec. 479; High's Extraordinary Legal Remedies, Sec. 625; 51 C. J., 317 and cases cited. Unless authorized by statute, the State does not inquire by *quo warranto* into the title to a private office, and the attorney-general in its behalf can intervene in matters of this nature only so far as they relate to public offices. *Attorney-General* v. *Drohan*, 169 Mass., 534, 48 N. E., 279.

In the early *Opinion of the Justices*, 3 Me., 481, in reference to public office, it was said: "We apprehend that the term 'office' implies a delegation of a portion of the sovereign power to, and the possession of it by the person filling the office; and the exercise of such power within legal limits constitutes the correct discharge of the duties of such office." In 22 Ruling Case Law, 374, we read: "One of the most important criteria of a public office is that the incumbent is invested with some of the functions pertinent to sovereignty, for it has been frequently decided that in order to be an office the position must be one to which a portion of the sovereignty of the state, either legislative, executive, or judicial, attaches for the time being. The performance of an executive, legislative, or judicial act is therefore a recognized test of a public office." And in *Attorney-General* v. *Drohan*, supra, that court, in defining a public office, said: "We think that it is one whose duties are in their nature public, that is, involving in their performance the exercise of some portion of the sovereign power, whether great or small, and in whose proper performance all citizens, irrespective of party, are interested." It is such an office which properly comes within the legitimate scope of *quo warranto*. High's Extraordinary Legal Remedies, Sec. 625.

Party nominees, however elected or designated, do not represent the State, nor are their duties in their nature public, involving the exercise of any of its sovereign power. They perform no executive, legislative or judicial acts. Their duties pertain to the party to which they belong and which alone is interested in their proper performance. No one could seriously contend that all the public, and particularly those of opposite or different political faith, are interested in their candidacies. The essential characteristics of a public office as defined are lacking.

Our examination of available authorities discloses that in the case of *In re Bewley*, 245 N. Y. S., 105, on the premise that a party nomination at a primary election is not a party position, it was held that the right to a nomination at a primary cannot be tested by *quo warranto*. And in *State* v. *Carrington*, 194 Iowa, 785, 190 N. W., 390, the dismissal of a petition for *quo warranto* to determine the right of the respondent to the Republican nomination for supervisor at a primary election was affirmed on the grounds that such a contest, under the statutes of that state, was not a proper subject of

*quo warranto* proceedings and judicial cognizance thereof was impractical if not impossible. But in *State* v. *Fernandez*, 106 Fla., 779, 143 So., 638, that court, under local statutes of different tenor expressly providing that primary contests shall be determined in the same manner as contests over the results of general elections, held that *quo warranto* should be extended so as to test the validity of a nomination in a primary election. And in *Jarman* v. *Mason*, 102 Okla., 278, 229 P., 459, under a statute similar to that of Florida, a resort to *quo warranto* to determine a primary contest was approved. It should be noted, however, that the Oklahoma statute has since been changed, and in *Dabney* v. *Hooker*, 121 Okla., 193, 249 P., 381, it is held that the nomination of a political party for public office cannot be contested in that jurisdiction by the civil action in the nature of *quo warranto* there substituted for the ancient writ.

We find in the decisions just reviewed no precedent for holding that a party nomination at a primary election is a public office which alone, at common law, comes within the legitimate scope of *quo warranto*. Those which deny that the remedy is available in primary contests are based on other grounds. The cases which support the view that a contest for a primary nomination may be determined in *quo warranto* proceedings are controlled by local statutes which do not exist and have no counterpart in this jurisdiction. In this state, there is no statute authorizing judicial cognizance of primary contests by *quo warranto*. The rules of the common law govern. Tested by those rules, a party nomination in a primary election is not a public office, the title to which the State, by its attorney-general, can try by *quo warranto*. On this ground, the ruling below is affirmed and the exceptions reserved overruled.

*Exceptions overruled.*