256 A.2d 206.

## CITY OF WARWICK *et al. vs.* WARWICK REGULAR FIREMEN'S ASSOCIATION.

JULY 30, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

110

ROBERTS, C. J. This is a complaint seeking to enjoin any compulsory binding arbitration concerning a collective bargaining agreement by the plaintiff city of Warwick and the respondent association of fire fighters employed by that city pursuant to the provisions of G. L. 1956, chap. 28-9.1 et seq., commonly known as the fire fighters' arbitration act. The cause was heard by a justice of the superior court, who on October 28, 1968, after taking testimony and hearing argument of counsel, denied the plaintiff city's motion to certify certain constitutional questions to this court and permanently enjoined the parties from engaging in any arbitration procedures pursuant to the statute. Judgment entered granting the injunctive relief, and thereafter the respondent prosecuted an appeal therefrom to this court.

The plaintiffs here challenge the constitutionality of certain provisions of the fire fighters' arbitration act. That act, P. L. 1961, chap. 149, gives the fire fighters of any city or town a right to bargain collectively with the city or town by which they are employed and in such collective bargaining to be represented by a bargaining agent. §28-9.1-4. The statute also obligates the cities and towns to recognize a bargaining agent selected by the fire fighters. §28-9.1-5.

Thereafter, the statute obligates the city or town, acting through its corporate authorities, to confer in good faith

with representatives of the bargaining agent within 10 days after a written request on the part of the bargaining agent for a meeting for collective bargaining purposes. §28-9.1-6. In §28-9.1-7 the legislature requires that after the end of 30 days of negotiation by the corporate authorities and the bargaining agent, any unresolved issues be submitted to arbitration. Said §28-9.1-7 provides specifically: "In the event that the bargaining agent and the corporate authorities are unable, within thirty (30) days from and including the date of their first meeting, to reach an agreement on a contract, any and all unresolved issues shall be submitted to arbitration."

The composition of the board of arbitration is expressly provided for in §28-9.1-8, as amended. The statute provides, in substance, for the appointment of an arbitrator by the bargaining agent of the firemen and for the appointment of an arbitrator by the corporate authorities. In turn it provides that these two, when selected, shall select the third arbitrator. It is further provided that if they are unable to agree within a prescribed period of time, the selection of the third arbitrator shall be made by the chief justice of the supreme court of Rhode Island.

Section 28-9.1-9, as amended, provides for the hearings to be held by the board in the course of arbitration, and it confers upon them certain powers pursuant to which such meetings are to be conducted. This statute prescribes certain time periods within which the hearings must be held and gives the arbitrators power to administer oaths and to require by subpoena the testimony of witnesses, and so on. This section also specifically provides that the decision of a majority of the arbitrators shall be binding and final. The statute reads, in pertinent part: "A majority decision of the arbitrators shall be binding upon both the bargaining agent and the corporate authorities."

The trial justice, noting the several constitutional issues raised, went on to conclude that the provisions of the act requiring compulsory and binding arbitration of unresolved issues between the parties violate art. IV, sec. 2, of the constitution of this state.[1] As we understand his decision, he concluded that the legislation here constitutes an invalid attempt to delegate legislative power, first, because §28-9.1-10 of the act does not provide sufficient standards for the guidance and control of an exercise of the delegated power by the boards of arbitration provided for therein and, second, because §28-9.1-9 attempts to delegate this portion of the legislative power to private persons rather than governmental agencies or public bodies. Where these standards are proper and sufficient, he appears to hold that a delegation of legislative power may be made to governmental agencies and boards. We construe the language of the trial justice to constitute a recognition of the authority of the legislature to pass on to nonlegislative agencies or boards some portion of the legislative power where such delegation is subject to norms and standards that will operate as appropriate guidelines for an exercise thereof by the administrative board or agency.

We concur in the conclusion of the trial justice that it is within the prerogative of the legislature to vest administrative boards or public bodies or officers with some portion of the legislative power where such action is necessary to give operative effect to the antecedent legislation. We are of the opinion that when the legislature, in an exercise of its law-making authority, enacts a statute the purpose of which is to secure to the public some right or benefit, it may

---

[1] Article IV, sec. 2, of the constitution of Rhode Island reads as follows: "The legislative power, under this constitution, shall be vested in two houses, the one to be called the senate, the other the house of representatives; and both together the general assembly. The concurrence of the two houses shall be necessary to the enactment of laws. The style of their laws shall be, *It is enacted by the general assembly as follows* * * * ."

delegate to an appropriate agency or officer some residuals of its legislative power in order to permit the selected agent to accomplish the ends contemplated in the original legislation. Of course, this is not to say that the legislature may abdicate its duty to legislate. Where the purposes of the antecedent legislative enactment may be best accomplished through the employment of an agent acting in its stead, the legislature may delegate to that agent a sufficient portion of its power to enable it to make the statute operative.

It is well-settled in this state that the general assembly may not unconditionally delegate any of its legislative power and that any attempt to so delegate such legislative power is unconstitutional and void. *Opinion to the Governor,* 91 R. I. 346, 162 A.2d 802. In a recent opinion in *First Federal Savings and Loan Association* v. *Langton,* 105 R. I. 236, 244, 251 A.2d 170, 175, referring to our prior opinion in *Opinion to the Governor,* 88 R. I. 202, 145 A.2d 87, we said that we "* * * subscribed to the more modern view that a legislature may delegate limited portions of the legislative power to administrative agencies if it be contained in expressly defined channels." There we expressed the opinion that such a delegation of a residual portion of the legislative power is simply legislative authorization to other bodies or officers to act as its agents or auxiliaries in carrying out its constitutional duties.

We turn first then to a consideration of the trial justice's conclusion that this statute constitutes an invalid delegation of the legislative power because those to whom it is delegated are not public officials but are private persons. We are unable to agree with this conclusion. Rather, we are compelled to conclude that each member of boards of

arbitration provided for under §28-9.1-8[2] is a public officer and that collectively these officers constitute an administrative or governmental agency.

An examination of the cases discloses that the tests for determining the question of whether or not one is a public officer or governmental employee are many and varied. The courts have included in such testing the question whether an oath is prescribed, a commission is issued, a definite tenure of office is fixed by law, a bond is required, and an incumbent of the office has authority to exercise some portion of the sovereign power of the state in his own right. However, it is generally held that none of these attributes, standing by itself, necessarily is determinative of the existence of a public office. *Hetrich* v. *County Commissioners of Anne Arundel County,* 222 Md. 304, 159 A.2d 642; *Bean* v. *Humphrey,* 223 Ark. 118, 264 S.W.2d 607.

The cases disclose a substantial divergence of opinion as to those attributes which must attach to an office before it assumes the character of a public office. Some courts have required the coexistence of a number of so-called indispensable attributes to establish the character of an office as public. In *People* v. *Freedland,* 308 Mich. 449, 14 N.W.2d 62, the court in unequivocal terms stated that there

---

[2]Section 28-9.1-8, as amended, reads as follows: "Within five (5) days from the expiration of the thirty (30) day period referred to in §28-9.1-7 hereof, the bargaining agent and the corporate authorities shall each select and name one (1) arbitrator and shall immediately thereafter notify each other in writing of the name and address of the person so selected. The two (2) arbitrators so selected and named shall, within ten (10) days from and after the expiration of the five (5) day period hereinbefore mentioned, agree upon and select and name a third arbitrator. If, on the expiration of the period allowed therefor, the arbitrators are unable to agree upon the selection of a third arbitrator, the chief justice of the Rhode Island supreme court shall select a resident of Rhode Island as the third arbitrator upon request in writing from either the bargaining agent or the corporate authorities. The third arbitrator, whether selected as a result of agreement between the two (2) arbitrators previously selected or selected by the chief justice, shall act as chairman of the arbitration board."

were five indispensable elements: 1. that the office must be created by the constitution or by the legislature; 2. it must possess a delegation of a portion of the sovereign power of the government to be exercised for the benefit of the public; 3. that the powers conferred and the duties to be discharged must be defined in the legislation; 4. that the duties must be performed independently and without control of a superior power other than the legislation; and 5. that it must have some permanency and continuity and not be merely temporary or occasional. We are persuaded that the viewpoint of the Michigan court is too rigid.

In *Burkett ex rel. Leach* v. *Ulmer,* 137 Me. 120, 15 A.2d 858, the court concluded that the important consideration in determining the public character of an office is whether the incumbent thereof is vested with some portion of the sovereignty so that he may exercise in some manner the sovereignty of the state either in its legislative, executive, or judicial aspects. The Maine court then went on to say: " 'The performance of an executive, legislative, or judicial act is therefore a recognized test of a public office.' " *Id.* at 123, 15 A.2d at 859. Other states take the view that when the legislature creates an office and vests the incumbent thereof with some element or portion of the sovereign power, absent some extraordinary circumstance, the office will be held to be public. *Bredice* v. *City of Norwalk,* 152 Conn. 287, 206 A.2d 433; *Mosby* v. *Board of Commissioners of Vanderburgh County,* 134 Ind. App. 175, 186 N.E.2d 18; *Tomaris* v. *State,* 71 Ariz. 147, 224 P.2d 209.

It would appear that most of the well-reasoned decisions rest on the theory that the character of an office as public is to be determined on the facts of each case. However, while many of the criteria are by no means indispensable and an office may be public without their existence, there appears to be one attribute of public office considered indispensable, and that is the right of the incumbent to ex-

ercise some portion of the sovereign power free from the supervision and control of others. *Kingston Associates, Inc.* v. *LaGuardia,* 156 Misc. 116, 281 N.Y.S. 390. Upon full consideration we are persuaded that where the occupant of a particular office is vested by law with a portion of the sovereignty of the state and is authorized to exercise functions either of an executive, legislative, or judicial character, the primary indispensable element for the establishment of its character as a public office is present. As a secondary consideration, it is our opinion that another important factor is whether or not the incumbent of the office is free to exercise the powers vested in it free of the supervision or control of others, other than to conform to the provisions of law creating the office. See *Francis* v. *Iowa Employment Security Commission,* 250 Iowa 1300, 98 N.W.2d 733.

In the instant case the question is whether an arbitrator appointed pursuant to the provisions of §28-9.1-8 is a public officer. In considering this question, we find that the legislature delegated to each of the arbitrators a portion of the sovereign and legislative power of the government, particularly the power to fix the salaries of public employees, clearly a legislative function. It is clear that each arbitrator is free to perform this duty without control or supervision from any superior. It is also to be observed that the provisions of §28-9.1-9[3] of the act establish a fixed term and specific duties for the incumbent. It is our conclusion

---

[3]Section 28-9.1-9, as amended, requires the board of arbitrators to call a hearing within 10 days after the appointment of the third member and further provides: "The hearing conducted by the arbitrators shall be concluded within twenty (20) days of the time of commencement, and within ten (10) days after the conclusion of the hearings, the arbitrators shall make written findings and a written opinion upon the issues presented, a copy of which shall be mailed or otherwise delivered to the bargaining agent or its attorney or otherwise designated representative and the corporate authorities. A majority decision of the arbitrators shall be binding upon both the bargaining agent and the corporate authorities."

then that an arbitrator appointed under the pertinent provisions of the statute is a public officer and that collectively the three constitute a public board or agency. We are compelled to conclude, therefore, that the trial justice erred in finding that the delegation here was to private persons.

The trial justice concluded also that the standards prescribed in §28-9.1-10 of the statute are insufficient to make the delegation of legislative power in this case constitutional. It is settled in this state, of course, that there may not be an unconditional delegation of legislative power. *Opinion to the Governor*, 91 R. I. 346, 162 A.2d 802. We cannot agree, however, that this legislation purports to delegate powers which do not meet our long-standing test that the delegation be limited to standards sufficient to confine the exercise of power for the purpose for which the delegation was made.

In *State ex rel. Colvin* v. *Lombardi*, 104 R. I. 28, 241 A.2d 625, we considered the question of whether standards included in the statute required that the operators of motorcycles "wear helmets of a type approved by the registrar." In that case we said: "The necessity for cloaking a delegation of legislative power with standards sufficient to confine the exercise of that power to the public welfare sought to be served is elementary. However, that the legislature has done so in a given case must be resolved in favor of constitutional validity when the language of the challenged act is reasonably open to such construction." *Id.* at 31-2, 241 A.2d at 627. In the instant case the legislature prescribed standards for the exercise of the delegated power that clearly are reasonably open to the conclusion that the exercise of the power by the arbitrators would be sufficiently confined to meet the constitutional requirement.

The legislature in §28-9.1-10 sets out specifically a number of comprehensive limitations on the actions of a board of arbitration when exercising the power delegated. They

require that certain factors "* * * be given weight by the arbitrators in arriving at a decision * * *." These factors include specifically a comparison of wage rates or hourly conditions of employment of the fire department in question with prevailing wage rates or hourly conditions of employment of skilled employees of the building trades and industry in the local operating area. They require also that consideration and weight be given to the wage rates or hourly conditions of employment of the fire department in question in comparison to similar wage rates or hourly conditions of employment of other cities or towns of comparable size. They require that weight be given to the interest and welfare of the public and specifically spell out that weight be given to the hazards of the employment and physical and educational qualifications of the employees and the job training and skills. In our opinion, these standards clearly are sufficient to meet the constitutional requirement that the delegated power be confined by reasonable norms or standards.

We would also direct attention to the obvious fact that these standards serve a dual purpose. They not only operate to direct or limit the action of the recipients of such delegated power, but they are standards pursuant to which on judicial review a court may determine whether the action taken by the recipients of such powers was capricious, arbitrary, or in excess of the delegated authority. In our opinion, this is an important consideration in determining the sufficiency of the standards prescribed in the legislation. In this case it is our opinion that they are sufficient for such purpose.

We would direct attention to a further provision of the statute which we think in itself constitutes a standard to guide a board of arbitrators in their exercise of the delegated power. Section 28-9.1-2 contains a legislative statement of the public policy to be served by this legislation.

It specifically states that the public policy is "* * * to accord to the permanent uniformed members of any paid fire department in any city or town all of the rights of labor other than the right to strike, or engage in any work stoppage or slowdown. To provide for the exercise of these rights, a method of arbitration of disputes is hereby established."

It is clear that the basic purpose of this legislation was to prohibit action on the part of the fire fighters that would cause any interruption of a service essential to the public safety, that is, fire protection. There is no doubt that this is a proper exercise of the police power, inasmuch as it certainly relates reasonably to one of the prime objectives of the police power, the preservation of the public safety and welfare. Obviously, this being a delegation, in part, of the police power of the state, a board of arbitrators is limited in its exercise of the power delegated to reach such decisions as in themselves may directly relate to the objectives of the police power, namely, the public safety, and to the public's interest in an uninterrupted operation of the public safety services.

The trial justice in his decision directed attention to §28-9.1-8, which provides that the chief justice of the supreme court shall appoint a third arbitrator whenever the two arbitrators selected by the parties are unable to agree upon the identity of such a third arbitrator. The trial justice specifically declined to pass on this issue although he did question whether it violated the doctrine of the separation of powers by requiring the chief justice to perform a legislative function. However, because the trial justice did not pass upon the constitutionality of this provision of the statute and because the record is persuasive that no attempt on the part of the chief justice to exercise the conferred power occurred, we think it prudent to refrain from our-

selves passing on the constitutionality of the provisions in question at this time.

The judgment below is reversed.

*Howard R. Haronian,* City Solicitor of Warwick, *Louis A. Geremia,* for plaintiffs.

*Hogan & Hogan, Thomas S. Hogan,* for defendant.

*Herbert F. DeSimone,* Attorney General, and *Charles G. Edwards,* Assistant Attorney General, Amicus Curiae.