STATE

v.

Harvey E. PELOQUIN.

No. 79–205–C.A.

Supreme Court of Rhode Island.

April 10, 1981.

2. For the list of exempted agencies see G.L. 1956 (1977 Reenactment) § 42–35–18.

**1328**

Dennis J. Roberts, II, Atty. Gen., Michael J. McEntee, Sp. Asst. Atty. Gen., for plaintiff.

Richard M. Casparian, Deputy Public Defender, Janice M. Weisfeld and George D. Caruolo, Asst. Public Defenders, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the defendant, Harvey E. Peloquin, from a judgment of conviction for delivery of a controlled substance (phendimetrazine) in violation of G.L.1956 (1968 Reenactment) § 21–28–4.-01(A)(2)(b) of the Uniform Controlled Substances Act (act) as enacted by P.L.1974, ch. 183, § 2.[1]

On June 15, 1973, the United States Attorney General, upon recommendation of the Director of the Bureau of Narcotics and Dangerous Drugs of the Department of Justice, added phendimetrazine to the schedule of controlled substances pursuant to his authority under 21 U.S.C.A. § 811 (1972).[2] In 1974, Rhode Island adopted the Uniform Controlled Substances Act[3] whose scope and purpose was to establish a more rational system of regulating substances that may pose a danger to the public health, regulations consistent with, to the extent possible, the laws of the United States and other states. General Laws 1956 (1968 Reenactment) § 21–28–1.01 as enacted by P.L. 1974, ch. 183, § 2. The act provides for placement of controlled substances in five schedules[4] with varying penalties assigned to each schedule.[5] Section 21–28–2.01 of the act enumerates the procedures under which the Director of Health of Rhode Island (Director of Health) shall add, reschedule, or delete a controlled substance. Accordingly, on April 29, 1975, Dr. Joseph E. Cannon, Director of Health, added phendimetrazine to the schedule of controlled substances pursuant to his authority under § 21–28–2.01(c).

1. The defendant was also charged with a second count of possession with intent to deliver a controlled substance. Because identical elements were required to establish both the possession with intent to deliver a controlled substance and the unlawful delivery of the same substance, the trial justice properly granted defendant's motion to dismiss the possession-with-intent-to-deliver count of the information. *See State v. Anil,* R.I., 417 A.2d 1367, 1374–75 (1980); *State v. Pope,* R.I., 414 A.2d 781, 788 (1980); *State v. Grullon,* 117 R.I. 682, 686, 371 A.2d 265, 267 (1977); *State v. Boudreau,* 113 R.I. 497, 503, 322 A.2d 626, 629 (1974).

2. 38 Fed.Reg. 15719, 15721 (1973). The functions of the Bureau of Narcotics and Dangerous Drugs under the federal act are now performed by the Drug Enforcement Administration. 21 U.S.C.A. § 802(4) (1972) as amended by the Act

of November 30, 1979, Pub.L. No. 96–132, § 16, 93 Stat. 1040, 1049.

3. Public Laws 1974, ch. 183, § 2. This act closely tracks the federal narcotic and dangerous drug law, 21 U.S.C.A. §§ 801–904 (1972), which has been adopted with minor variations in forty-five states. 9 *U.L.A. Mat., Fam. & H. Laws,* 35 (1979) (1981 Supp.).

4. General Laws 1956 (1968 Reenactment) § 21–28–2.08 as enacted by P.L.1974, ch. 183, § 2.

5. General Laws 1956 (1968 Reenactment) § 21–28–4.01, as enacted by P.L.1974, ch. 183, § 2. For example, Schedule I substances are deemed the most dangerous; hence, the possession and distribution of any of the substances listed invoke the heaviest penalties. Phendimetrazine is designated as a Schedule III substance under § 21–28–2.08.

On December 2, 1976, defendant sold for the sum of $5, five pills later determined to contain phendimetrazine, to an agent working for the Woonsocket police department. Thereupon, defendant was charged with unlawful possession with intent to deliver a controlled substance and with unlawful delivery of the same substance—both counts being in violation of § 21–28–4.01(A)(2)(b).

Before trial, defendant moved to dismiss the charges on the ground that phendimetrazine was not an unlawful drug as set forth in Schedule III of § 21–28–2.08 and *inter alia* that the designation of the drug as a controlled substance by the Director of Health constituted an illegal delegation of legislative authority. Essentially, defendant argued that the delegation allowed the Director of Health to usurp the legislative prerogative to declare what shall constitute criminal behavior in the area of drug and narcotics control.

After considering defendant's motion and arguments, the trial justice found that the Legislature had provided adequate standards to prescribe the authority of the Director of Health. Moreover, the trial justice noted that the act provided for judicial review of the decisions of the Director of Health. Therefore, the trial justice determined that the act did not establish an unconstitutional delegation or usurpation of legislative authority and denied defendant's motion.

At trial before a justice of the Superior Court sitting without a jury, defendant stipulated to the facts as presented by the state and waived his right to be heard further. Upon review of the evidence presented, the trial justice found defendant guilty

of the unlawful delivery of a controlled substance.

■ The sole issue set forth is whether § 21–28–2.01(c) of the Rhode Island Uniform Controlled Substances Act establishes an unconstitutional delegation of legislative authority to an administrative agent of the executive branch of government, the Director of Health.[6]

The defendant contends first that the possession and delivery of phendimetrazine became a crime only upon the action of the Director of Health. Furthermore, defendant argues that the power delegated to the Director of Health to control, reschedule, or delete substances under § 21–28–2.01(c) is demonstrative of the unbridled discretion accorded the Director of Health to make heretofore innocent conduct a crime and criminal behavior a protected activity. Thus, defendant contends that § 21–28–2.01(c) of the act impermissibly delegates to an agent of the executive branch the legislative prerogative of declaring what constitutes criminal behavior.

The state counters that a delegation of legislative power is permitted, provided it is prescribed by adequate standards and safeguards. In support of its position that § 21–28–2.01 was a proper delegation, the state cites numerous federal and state court decisions that have upheld the constitutionality of statutes comparable to § 21–28–2.01. Additionally, the state indicates that the substance in issue, phendimetrazine, is controlled under § 21–28–2.01(c) and not under § 21–28–2.01(a), and thus it is the decision of the Legislature, and not the decision of the Director of Health that any substance controlled under federal law is

6. In this appeal, defendant contends that § 21–28–2.01(a) through (c) of the act constitute an unconstitutional delegation of legislative authority to an executive agent, the Director of Health. It should be noted, however, that defendant is challenging essentially the Director of Health's authority to add phendimetrazine to the list of controlled substances pursuant to § 21–28–2.01(c) of the Rhode Island Uniform Controlled Substances Act. It is a well-settled principle that this court will not pass on the constitutionality of a statute on a broader basis than the circumstances require. *See State v.*

*Sharbuno*, R.I., 390 A.2d 915, 919 (1978); *State ex rel. Widergren v. Charette*, 110 R.I. 124, 128, 290 A.2d 858, 860 (1972); *King v. Williamson*, 103 R.I. 640, 644, 240 A.2d 408, 410 (1968). If, in the instant case, we were to pass on the other challenged provisions, § 21–28–2.01(a) and § 21–28–2.01(b), defendant thereby would take nothing. Therefore, the scope of our review will be limited to § 21–28–2.01(c), the section of the act under which the challenged delegation of legislative authority was effectuated.

similarly to be controlled under Rhode Island law unless the Director of Health objects. Thus, the state argues that under no circumstances does the subsection authorize the Director of Health independently to control, reschedule, or delete a substance.

■ Before making a determination concerning the constitutional validity of § 21–28–2.01(c), we must first determine whether the authority granted to the Attorney General of the United States under 21 U.S.C.A. § 811 (1972) as amended, constitutes a lawful delegation of legislative power. From a reading of the numerous federal cases that have addressed this specific issue, it is clear that the overwhelming majority of federal jurisdictions agree that the delegation effectuated in 21 U.S.C.A. § 811 is constitutional. *United States v. Barron*, 594 F.2d 1345, 1352 (10th Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1056 (1979); *United States v. Gordon*, 580 F.2d 827, 840 (5th Cir. 1978); *United States v. Roya*, 574 F.2d 386, 392 (7th Cir.), *cert. denied* 439 U.S. 857, 99 S.Ct. 172, 58 L.Ed.2d 165 (1978); *United States v. Boney*, 572 F.2d 397, 403–04 (2d Cir. 1978); *United States v. Davis*, 564 F.2d 840, 844 (9th Cir. 1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 733, 54 L.Ed.2d 760 (1978); *United States v. Pastor*, 557 F.2d 930, 941 (2d Cir. 1977); *United States v. Porter*, 544 F.2d 936, 940 (8th Cir. 1976). In view of the standards and safeguards prescribed by 21 U.C.S.A. § 811 (1972), we are inclined to agree with the conclusion and reasoning of these courts that the authority delegated under the federal act is constitutionally permissible.

■ We have noted previously that the nondelegation doctrine in Rhode Island emanates from R.I.Const., art. IV, secs. 1 and 2, which provide that the Rhode Island Constitution shall be the supreme law of the state and that the legislative power shall be vested in the two houses of the Legislature. *J.M. Mills, Inc. v. Murphy*, 116 R.I. 54, 61, 352 A.2d 661, 665 (1976). The nondelegation doctrine, however, is not to be construed as prohibiting entirely the delegation of legislative power. *See City of Warwick v. Warwick Regular Firemen's Ass'n*, 106 R.I. 109, 112–13, 256 A.2d 206, 209 (1969). Rather this doctrine prohibits only unreasonable delegations of legislative power. *Jennings v. Exeter-West Greenwich Regional School Dist. Comm.*, 116 R.I. 90, 97, 352 A.2d 634, 638 (1976); *City of Warwick v. Warwick Regular Firemen's Ass'n*, 106 R.I. at 113, 256 A.2d at 208–09. Thus, when the delegation of legislative power to an administrative agent is accompanied by sufficient standards or safeguards to prescribe the exercise of that power, the delegation will be deemed reasonable and lawful. *See DePetrillo v. Coffey*, R.I., 376 A.2d 317, 319 (1977); *First Republic Corp. of America v. Norberg*, 116 R.I. 414, 420, 358 A.2d 38, 42 (1976); *Housing Authority of Woonsocket v. Fetzik*, 110 R.I. 26, 34, 289 A.2d 658, 662 (1972); *First Federal Savings and Loan Ass'n v. Langton*, 105 R.I. 236, 244, 251 A.2d 170, 175 (1969). Furthermore, whereas the Legislature may not delegate the authority to administer a complete law, it may constitutionally confer discretion to an administrative agent to determine those facts that will accomplish the ends contemplated in the original legislation. *See DePetrillo v. Coffey*, 376 A.2d at 319; *J.M. Mills, Inc. v. Murphy*, 116 R.I. at 63–64, 352 A.2d at 665; *City of Warwick v. Warwick Regular Firemen's Ass'n*, 106 R.I. at 112–13, 256 A.2d at 208.

In addressing a similar issue, as in the instant case, the majority of other state courts have upheld the statutory scheme and have posited that some measure of legislative delegation is peculiarly necessary in the complex ever-changing area of drug control. *See, e. g., Cilento v. State*, 377 So.2d 663 (Fla.1979); *Samson v. State*, 27 Md.App. 326, 341 A.2d 817 (1975); *State v. King*, 257 N.W.2d 693 (Minn.1977); *Montoya v. O'Toole*, 94 N.M. 303, 610 P.2d 190 (1980); *Threlkeld v. State*, 558 S.W.2d 472 (Tex.Cr.App.1977). In *State v. Edwards*, 572 S.W.2d 917 (Tenn.1978), the court indicated that

"[t]he legislature, by its nature, has neither the facilities nor the expertise to assume [an effective drug-control program]. Furthermore, because the legisla-

ture is not in continuous session, it cannot give the drug control program constant attention, the lack of which could result in a dangerous drug being widely disseminated throughout the state before effective controls were instituted." *Id.* at 919. *Accord, United States v Pastor,* 557 F.2d 930, 941 (2d Cir. 1977); *State v. Lisk,* 21 N.C.App. 474, 477, 204 S.E.2d 868, 870 (1974). Correspondingly, we acknowledge that the complex ever-changing area of drug control requires some measure of legislative delegation.

In reading § 21–28–2.01(c), it is clear that upon publication in the federal register of a final order designating, rescheduling, or deleting a substance as a controlled substance, the Director of Health must similarly control the substance as a matter of Rhode Island law. Under no circumstances does § 21–28–2.01(c) authorize the Director of Health to add, reschedule, or delete a substance on his own initiative. Contrary to defendant's contentions, the only discretion allowed the Director of Health pursuant to § 21–28–2.01(c) is the authority to object to the action of the federal government in designating, rescheduling, or deleting a controlled substance. If the Director of Health objects to the federal mandate, he must publish reasons for the objection, hold public hearings, and ultimately file a decision with the Secretary of State. If the Director of Health does not raise any objections within sixty days of publication of the final order in the federal register, the federal mandate automatically becomes a matter of Rhode Island law. Therefore, it is the decision of the Legislature, and not the unrestrained decision of the Director of

Health, that any substance controlled pursuant to federal law is similarly controlled under Rhode Island law. The action of the Director of Health in adding phendimetrazine to the schedule of controlled substances merely brought Rhode Island law into conformity with federal law under which the possession or delivery of phendimetrazine was already a federal offense.

We additionally note that the authority of the Director of Health is prescribed elsewhere in § 21–28.2.01 by the standards set forth in § 21–28–2.01(a)[7] and that any actions and final determinations made by the Director of Health are subject to judicial review pursuant to § 21–28–5.14, in accordance with G.L.1956 (1977 Reenactment) § 42–35–15 of the Rhode Island Administrative Procedures Act. We find, therefore, that the legislative power delegated to the Director of Health under § 21–28–2.01(c) is controlled by adequate standards and safeguards. Accordingly, we hold that § 21–28–2.01(c) does not establish an unconstitutional delegation of legislative authority to an agent of the executive branch of government.

The defendant's appeal is denied and dismissed, and the judgment of conviction appealed from is affirmed.

SHEA, J., did not participate.

---

7. In making determinations concerning controlled substances pursuant to G.L.1956 (1968 Reenactment) § 21–28–2.01(a), the Director of Health shall consider among other things:

"(a) * * *

(1) its actual or relative potential for abuse;

(2) *scientific evidence of its pharmacological effect if known;*

(3) state of current scientific knowledge regarding the substance;

(4) its history and current pattern of abuse;

(5) the scope, duration, and significance of abuse;

(6) what, if any, risk there is to the public health;

(7) its psychic or physiological dependence liability;

(8) *whether the substance is an immediate precursor of a substance already controlled under this chapter.*