**In re ADVISORY OPINION TO the
GOVERNOR (Rhode Island
Airport Corporation).**

**No. 93–311–M.P.**

Supreme Court of Rhode Island.

July 8, 1993.

Elizabeth Murdock Myers, Executive Counsel, Providence, for Governor.

Penelope W. Register, Tillinghast, Collins & Graham, Providence, for R.I. Port Authority & Economic Development Corp.

Robert D. Fine, Richad D. Zimmerman, Jerry H. Elmer, Licht & Semonoff, for Rhode Island Airport Corp.

Jeffrey H. Gladstone, Partridge Snow & Hahn, Providence, for The Greater Providence Chamber of Commerce.

Jeffrey B. Pine, Atty. Gen., Thomas Dickinson, Deputy Atty. Gen., Lisa Dinerman, Sp. Asst. Atty. Gen., Providence, for Representative George Zinyeh—District 35 House of Representatives.

To His Excellency Bruce Sundlun

Governor of the State of Rhode Island

and Providence Plantations

Pursuant to article 10, section 3, of the Rhode Island Constitution, Your Excellency has requested our answer to the following question of law:

"Whether the State of Rhode Island, acting by and through the Governor and/or through the Department of Transportation and its Director, can lease certain real estate and transfer certain fixtures, equipment and personal property, commonly known as the T.F. Green Airport, North Central State Airport, Newport State Airport, Block Island State Airport, Quonset State Airport, and Westerly State Airport (hereinafter collectively defined as the 'Airport System') to the Rhode Island Airport Corporation (hereinafter 'RIAC'), a subsidiary of the Rhode Island Port Authority and Economic Development Corporation, for a period not to exceed thirty years and whether the Director of the Department of Transportation can delegate to RIAC the duty to operate and manage the Airport System and the duty to supervise and regulate aeronautical matters within the State of Rhode Island."

On June 23, 1993, we heard oral argument pertaining to this matter. Because of the represented urgency about our response, we issued an order on June 25, 1993, outlining our conclusions. We stated:

"(1) The Director of the Department of Transportation and the Rhode Island Port Authority possess the statutory authority to lease the real estate, fixtures, equipment, and personal property comprising the airport system to RIAC for a period not to exceed thirty years. RIAC, pursuant to such lease, possesses the authority to become the lessee of the property comprising the airport system.

"(2) The Director of the Department of Transportation and the Rhode Island Port Authority possess the statutory authority to delegate to RIAC the power to operate and manage the airport system. RIAC, pursuant to such delegation, possesses the authority to operate and manage the airport system.

"(3) The Director of the Department of Transportation and the Rhode Island Port Authority possess the statutory authority to delegate to RIAC the duty to

supervise and regulate aeronautical matters within the State of Rhode Island. RIAC, pursuant to such delegation, possesses the authority to regulate aeronautical matters. The exercise of this authority does not violate the Rhode Island Constitution, nor does it violate the provisions of the Rhode Island General Laws, nor does it violate any other existing statutes."

In the following opinion we explain our reasoning underlying these conclusions.

Before we examine the legal rules governing this inquiry, it is helpful to describe briefly the three state agencies involved in this matter. The Department of Transportation (DOT) is the agency that historically has operated airports and regulated aeronautical matters in Rhode Island. The broad managerial and supervisory powers of the DOT regarding airports and aeronautical matters are set forth in G.L.1956 (1988 Reenactment) chapter 13 of title 42, in G.L.1956 (1987 Reenactment) chapter 4 of title 1, and in G.L.1956 (1990 Reenactment) § 37–5–3.

The DOT, however, is not the only agency that the General Assembly has vested with the power to operate and regulate airports and aeronautics. In 1974 the General Assembly created the Rhode Island Port Authority and Economic Development Corporation (RIPA) "for the purposes of acquiring and developing real and personal property" and "promoting thereby the economic development of the state." Public Laws 1974, ch. 100, § 14, now codified at G.L.1956 (1988 Reenactment) § 42–64–4. The General Assembly vested RIPA with the power to manage airports in § 42–64–5, which states that one of RIPA's purposes is to "undertake any port project" including but not limited to "airport facilit[ies]." Section 42–64–3(r).

The General Assembly also granted RIPA the power to perform its functions through one or more subsidiary corporations. Section 42–64–7.1(a). With few exceptions not applicable to this matter, subsidiaries possess "all the powers, privileges [and] rights" of RIPA, the parent corporation. Section 42–64–7.1(b). Pursuant to this statutory authorization, RIPA created the third entity involved in this matter, the Rhode Island Airport Corporation (RIAC), to manage and operate the state's airport system.

Your Excellency's request asks us to determine (1) whether the director of the DOT may lease the real estate and transfer the fixtures, equipment, and personal property that comprise the state's airport system to RIAC for a period not to exceed thirty years, (2) whether the director of the DOT may delegate to RIAC the duty to operate and manage the airport system, and (3) whether the director of the DOT may delegate to RIAC the duty to regulate aeronautical matters within the State of Rhode Island.

■ In determining whether these transfers of property and delegations of governmental duties are valid, we face primarily a question of statutory interpretation. It is a well-established principle of administrative law that agencies are a product of the enabling legislation that creates them. Agency action is only valid, therefore, when the agency acts within the parameters of the statutes that define their powers. *F. Ronci Co. v. Narragansett Bay Water Quality Management District Commission*, 561 A.2d 874, 879 (R.I.1989). *See also* Bernard Schwartz, *Administrative Law*, § 4.4 at 171 (3d ed.1991) (stating that "[t]he statute is the source of agency authority as well as of its limits. If an agency act is within the statutory limits (or vires), its action is valid; if it is outside them (or ultra vires), it is invalid. No statute is needed to establish this; it is inherent in the constitutional positions of agencies and courts").

This principle requires us, therefore, to determine whether statutory authority exists that enables the agencies involved in this matter to perform the functions Your Excellency seeks to have them perform. Specifically, statutory authority must exist that authorizes the DOT to transfer and lease property to RIAC. The General Assembly must have granted to the DOT the power to subdelegate governmental functions to RIAC. Finally the General Assem-

bly must have given RIAC the power to perform the functions that had previously been performed by the DOT.

## I

### THE QUESTION OF STATUTORY AUTHORITY

A. The Leasing of Real Estate and the Transfer of the Fixtures, Equipment, and Personal Property Composing the State's Airport System to RIAC for a Period not to Exceed Thirty Years

■ We believe that a number of statutes provide the director of the DOT with authority to act as lessor and transferor of the property composing the airport system. The most specific statute is G.L.1956 (1987 Reenactment) § 1–2–7, which states in pertinent part:

"The department of transportation may lease any portion of any airport or landing field owned or operated by the state * * * for a period not exceeding five (5) years * * * in the manner prescribed by § 37–7–9; Provided, however, where a substantial building, renovation, improvement, or addition to an existing building is to be constructed for any airport * * * the department may lease in the manner provided in § 37–7–9, any portion of any airport or landing field owned or operated by the state for a period not exceeding thirty (30) years."

The above-cited language of § 1–2–7 sets forth two different methods by which the director of the DOT may lease the property that makes up the airports. If the director of the DOT seeks to lease property upon which no improvements or renovations are to be performed, the director may accomplish this leasing arrangement for a period of five years, if the director obtains the approval of the State Properties Committee, of the Director of Administration, and as to form, of the Attorney General, as is required by G.L.1956 (1990 Reenactment) § 37–7–9.

In the event the director of the DOT seeks to lease property upon which improvements are to be performed, § 1–2–7 authorizes the director to lease the property for thirty years, if the director obtains the approval of the State Properties Committee, of the Director of Administration, and as to form, of the Attorney General. Section 37–7–9. Assuming the director in this matter seeks to transfer property which is to be improved and assuming that the director obtains the approval of the aforementioned officials, § 1–2–7 provides the director with clear statutory authority to lease the airport property for a period not to exceed thirty years.

We also believe that § 37–7–6 provides general statutory authority to transfer the airport property. It states:

"The governor, upon the request in writing of any interested general officer or the head of any department, board, bureau, commission, or agency of the state government, may execute a certificate transferring custody and control of and supervision over any land, and all buildings and improvements thereon and other real property, title to which is vested in the state of Rhode Island * * * from the department, board, bureau, commission, or agency exercising custody, control, or supervision to another department, board, bureau, commission, or agency of the state government."

■ Applying the provisions of this statute, we determine that the DOT is clearly a "department" within the meaning of § 37–7–6, which seeks to transfer custody and supervision of property. Moreover, RIAC has the statutory authority to become lessee and transferee of the property because RIAC is "another department, board, bureau, commission, or agency of the state government." *Id.* As a subsidiary of RIPA, RIAC possesses all the "powers, privileges, [and] rights" of RIPA. Section 42–64–7.1(b). The General Assembly has expressly stated that RIPA is a "governmental agency." Section 42–64–4(a). Since RIAC holds the same rights and is subject to the same limitations as RIPA, RIAC is also a "governmental agency." RIAC therefore qualifies as a state agency authorized to accept the transfer of property from the DOT.

In addition the enabling legislation that created RIPA and RIAC expressly authorizes these agencies to become lessees and transferees of property transferred by the state. Section 42–64–6(h).

On the basis of these statutes, we conclude that the director of the DOT has the authority to lease the airport property to RIAC and RIAC has the authority to become lessee and transferee of the property for a period not to exceed thirty years.

B. The Delegation of the Duty to Operate and Manage Airport Facilities and Regulate Aeronautical Matters within the State to RIAC

■ The next issue we address is whether the director of the DOT possesses the statutory authority to subdelegate the duty to operate and manage the airport facilities and to regulate aeronautical matters within the state to RIAC. When we use the term "subdelegation," we mean transfers by an executive-branch agency or official of powers or duties to subordinates or to an outside agency. 1 Kenneth C. Davis, *Administrative Law Treatise*, 3:16—3:18 (2d ed. 1978). The test for determining whether a subdelegation is valid is primarily a question of statutory interpretation. *Equal Employment Opportunity Commission v. Raymond Metal Products Co.*, 385 F.Supp. 907, 921 (D.Md.1974). Our obligation is to determine whether the General Assembly fairly intended to grant the director of the DOT the power to subdelegate to outside agencies the duty to operate airports and regulate aeronautical matters.

The controlling statute bearing upon this inquiry is G.L.1956 (1988 Reenactment) § 42–13–2(B), as amended by P.L.1990, ch. 309, § 3, which states:

"The director [of the DOT] may assign such other responsibilities to the divisions and agencies as he or she shall find appropriate and may reassign functions to divisions and agencies other than as set out in this section if he or she shall find such reassignment necessary to the proper and efficient functioning of the department or of the state's transportation system."

■ The parties in this matter offer two different interpretations of the language "may reassign functions to divisions and agencies other than as set out in this section." According to Representative Zainyeh, this language only authorizes the director of the DOT to subdelegate to divisions within the DOT, not to outside agencies. This interpretation contradicts the position of RIPA and RIAC, which read "such other divisions and agencies" as plainly authorizing the director of the DOT to subdelegate to outside agencies.

We believe that the more sensible reading of this language is that the director has the authority to subdelegate to agencies outside the DOT. The DOT is a department of the state organized pursuant to § 42–13–2(A) into several divisions. When the General Assembly authorizes the director to reassign functions to "divisions and agencies other than as set out in this section," the General Assembly necessarily refers to divisions and agencies outside § 42–13–2 and hence outside the DOT.

This conclusion is supported by a comparison of § 42–13–2(B) with G.L.1956 (1988 Reenactment) § 42–17.1–2(h), as amended by P.L.1990, ch. 320, § 4, which involves the Department of Environmental Management (DEM). Section 42–17.1–2(h) authorizes the director of the DEM to "assign or reassign, with the approval of the governor, any functions, duties, or powers established by this chapter to any agency *within the department,* except as hereinafter limited." (Emphasis added.)

Section 42–13–2(B) contains no such limitation on the reassignment powers of the director of the DOT. Although we are hesitant to glean a legislative intent solely from the omission of the phrase "within the department," we believe the absence of this restriction on the powers of the director combined with the use of the open-ended language "such other divisions and agencies" reflects a legislative intent to authorize the director to subdelegate functions to agencies outside the DOT.

General Laws 1956 (1988 Reenactment) § 42–6–5 does not alter our interpretation. Section 42–6–5 states:

> "Whenever the governor shall deem it to be desirable, he or she may designate and define within the limits of any department the agency or the official thereof which shall perform any specific or special function designated by law to be performed within a particular department, and any administrative function of government established by law that may not be specifically enumerated in this title shall be performed by such appropriate department as the governor may designate. *Nothing herein shall authorize the governor to transfer any duties or administrative function of government designated by law to be performed within a particular department to any other department.*" (Emphasis added).

As a rule of statutory construction, when a general provision and a special provision cover the same subject matter, this court shall attempt to give effect to both, and if we cannot give effect to both, the special provision prevails. General Laws 1956 (1988 Reenactment) § 43–3–26. *See also St. Germain v. City of Pawtucket,* 119 R.I. 638, 641, 382 A.2d 180, 181 (1978) (applying § 43–3–26).

In this matter § 42–6–5 regards the same subject matter as § 42–13–2(B). Section 42–6–5 is a general provision that limits the power of the governor to reassign functions delegated to a particular agency to another agency. In contrast, § 42–13–2(B) is a specific provision that authorizes the director of the DOT to reassign functions to outside agencies. Since it is impossible for us to give effect to both provisions, § 42–13–2(B) controls.

It is important to note that § 42–6–5, which contains the general prohibition against reassignment to outside agencies, was originally enacted in 1939 and reflects early views on the development of the allocation of administrative and executive powers within the state. Public Laws 1939, ch. 660, § 5. Section 42–13–2(B) is a more specific, more recent statute that grants the director of the DOT expanded powers that correspond to the growth of the administrative structure in Rhode Island. *See Whyte v. Sullivan,* 119 R.I. 649, 654, 382 A.2d 186, 188–89 (1978) (stating that when the provisions of an earlier statute are inconsistent with a more recent statute, we should give effect to the more recent enactment).

Moreover, nothing in § 42–6–5 prohibits the General Assembly from enacting a specific statute granting the director of the DOT broad reassignment powers. Section 42–6–5 states "[n]othing herein shall authorize" transfers to outside agencies. This language leaves the door open for the General Assembly to enact specific legislation granting the Governor and/or an agency director the power to subdelegate to outside agencies. We believe that given the well-accepted views of statutory interpretation and the timing of the enactment of the two pieces of legislation, § 42–13–2(B) is an exception to the general prohibition found in § 42–6–5.

Having concluded that the director of the DOT has the authority to subdelegate functions to agencies outside the DOT, we now decide whether RIAC is an agency within the meaning of § 42–13–2(B) qualified to receive this subdelegation. As noted earlier in this opinion, RIAC is a wholly owned subsidiary of RIPA and holds the same powers and limitations as RIPA. Since RIPA is defined as a "governmental agency," RIAC also is a governmental agency. Hence RIAC is a state agency empowered to receive the subdelegation from the DOT. Section 42–64–4(a).

[redacted] In order for this subdelegation to be valid, however, the enabling legislation that created RIPA and RIAC must grant RIPA and RIAC the power to operate airports and to regulate aeronautical matters within the state. Regarding the duty to operate and manage airports, we find express statutory authorization that enables RIAC to perform this function. Among the powers RIAC derives from RIPA is the power "[t]o undertake the planning, development, construction, financing, management, operation of any project, and all activities in relation thereto." Section 42–64–7(a). In addition, RIAC derives from RIPA the power "[t]o manage any project, whether owned or leased by the corporation." Section 42–64–7(d). Pursuant to § 42–64–3(r),

the term "project" includes airport facilities. Accordingly there is express statutory authority enabling RIAC, as a subsidiary of RIPA, to operate and manage Rhode Island airport facilities.

Although the enabling legislation that created RIPA and RIAC does not expressly grant these agencies the power to regulate aeronautical matters in Rhode Island, we believe that a fair reading of the enabling legislation grants RIPA this power. Section 42–64–4(b) states in pertinent part:

"It is the intent of the general assembly by the passage of this chapter to vest in the corporation all powers, authority, rights, privileges, and titles which may be necessary to enable it to accomplish the purposes herein set forth, and this chapter and the powers granted hereby shall be liberally construed in conformity with those purposes."

Toward this end, the General Assembly has granted RIPA and its subsidiaries regulatory power by authorizing the agencies to promulgate rules and regulations, § 42–64–7(p), as well as enforcement power by authorizing the agencies to establish "penalties." Section 42–64–7(q).

We believe the power to regulate aeronautical matters fits within these broad enumerated powers granted to RIPA and its subsidiaries. We agree with RIPA and RIAC that as a practical matter the exercise of aeronautical duties is a necessary and convenient corollary to RIAC's express authority to operate and manage airports. To require the DOT to retain the regulatory power over aeronautics while delegating the duty to manage airports to RIAC would thwart a primary purpose of RIPA's enabling legislation, which is to promote the efficient operation of the state's airport facilities. We conclude that RIAC, as a subsidiary of RIPA, possesses the statutory authority to regulate aeronautical matters in Rhode Island.

In sum, statutory authority exists to support the transfers contemplated by Your Excellency's request. The DOT has the authority to act as lessor and transferor of the real and personal property that makes up the airport system, and RIAC, as a subsidiary of RIPA, possesses the authority to act as lessee and transferee of this property. The director of the DOT possesses the authority to subdelegate duties to RIAC, and RIAC has the statutory authority to operate airports and to regulate aeronautical matters within the state.

## II

## THE CONSTITUTIONALITY OF THE PROPOSED TRANSFERS AND DELEGATIONS

We believe that the proposed transfers and delegations would not violate any of the provisions of the Rhode Island Constitution. There are three potential constitutional grounds upon which an individual or an entity could challenge the proposed actions: (1) as an unconstitutional delegation of legislative authority to RIAC, (2) as an unconstitutional delegation of governmental authority to private persons or entities, and (3) as an unconstitutional exercise of executive authority. For the reasons that follow, we do not believe that any of these potential constitutional challenges withstands scrutiny.

Beginning with the issue of the delegation of legislative authority to an executive-branch agency, we already have held that the powers delegated to RIPA and hence to its subsidiaries were not an unconditional delegation of legislative power in violation of the Rhode Island Constitution. *Advisory Opinion to the Governor*, 113 R.I. 586, 596, 324 A.2d 641, 647 (1974). We see no reason to reexamine this issue and conclude that the delegation of managerial and regulatory authority to RIAC satisfies our rules prohibiting unconditional delegations to administrative agencies.

██ Turning to the second constitutional argument, we recognize that there is a line of cases that hold legislative attempts to delegate governmental functions to private persons or entities unconstitutional. *City of Warwick v. Warwick Regular Firemen's Association*, 106 R.I. 109, 113, 256 A.2d 206, 209 (1969) (indicating that delegations of legislative functions to private persons may violate the Rhode Island Consti-

tution). *See also In re North Jersey District Water Supply Commission,* 175 N.J.Super. 167, 206, 417 A.2d 1095, 1115 (1980) (holding that subdelegations to private persons or entities are constitutionally suspect because such person or entity is not subject to public accountability).

We do not believe, however, that the delegation of managerial and regulatory power to RIPA and its subsidiary, RIAC, would violate this constitutional doctrine because these agencies are not private entities. It is true that § 42–64–4(a) describes RIPA as "a public corporation of the state having a distinct legal existence from the state." This separate corporate nature, however, is combined with a number of public attributes. Most importantly, the actions of RIPA and its subsidiaries are subject to the provisions of Rhode Island's Administrative Procedures Act, as codified in G.L.1956 (1988 Reenactment) chapter 35 of title 42. Section 42–35–1(b). The safeguards found in the Administrative Procedures Act, including but not limited to the availability of judicial review of RIAC's actions, serve as a limit on potentially arbitrary agency action. *See.* §§ 42–35–15.1 and 42–35–16. We conclude that although RIAC certainly has some distinct corporate attributes, it is primarily and sufficiently public in nature so as to withstand a constitutional challenge on the ground that the General Assembly unconstitutionally delegated governmental authority to a private entity or on the ground that the director of the DOT unconstitutionally subdelegated governmental authority to a private entity.

■ The contemplated transfers outlined above also would not accomplish an unconstitutional exercise of executive-branch authority. As noted earlier in this opinion, Your Excellency's proposed actions are consistent with all the statutes pertaining to this matter. *See In re State Employees' Unions,* 587 A.2d 919 (R.I.1991) (recognizing broad executive-branch authority when the Governor seeks to act in a manner consistent with statutory mandates). Because we believe Your Excellency's pro-

posals accord with the will of the General Assembly, we conclude that the proposed actions would not run afoul of the constitutional limitations on executive-branch action.

Finally we address the suggestion of a number of senators who filed a statement with this court that "it is contrary to sound public policy that such a major transfer should take place without the approval of the General Assembly which represents the people of our state." These senators suggest that the proper method by which the director of the DOT should accomplish this transfer of power is to submit a comprehensive legislative package to the General Assembly for consideration.

We agree that comprehensive legislation accomplishing these transfers would have been an alternative to our analysis and construction of the several statutes outlined in this opinion. Our role, however, is not to require Your Excellency to chart a particular political course. Our obligation is to determine whether the proposed actions would violate the Rhode Island Constitution and the General Laws of this state. We have performed this function and conclude that the proposed transfers and delegations would be legal in all respects.

Respectfully submitted,

Chief Justice Thomas F. Fay

Justice Joseph R. Weisberger

Justice Florence K. Murray

Justice Donald F. Shea

Justice Victoria Lederberg